975 A.2d 193

**Gloria A. RICE, et al.**

v.

**UNIVERSITY OF MARYLAND MEDICAL
SYSTEM CORPORATION.**

**No. 2870, Sept. Term, 2007.**

Court of Special Appeals of Maryland.

July 6, 2009.

Thomas J. McNicholas (Robert E. Joyce and Suder Law Firm, P.A., on the brief), Baltimore, for appellant.

Jessica L. Ellsworth (James R. Chason, Mark D. Gately and Scott R. Haiber, on the brief), Washington, DC, for appellee.

Panel: DEBORAH S. EYLER, MEREDITH, and JAMES A. KENNEY, III (Retired, Specially assigned), JJ.

MEREDITH, J.

In *Walzer v. Osborne*, 395 Md. 563, 585, 911 A.2d 427 (2006), the Court of Appeals held: "Because [the claimant had] failed to attach the expert report to the certificate of qualified expert in a timely manner, the trial court was required to dismiss [the] medical malpractice claim." When the *Walzer* decision was announced, the appellants in the present appeal were in the midst of pursuing claims based upon alleged medical

negligence. They had won a substantial verdict in one jury trial, but a new trial had been ordered. Relying upon *Walzer*, the appellee, University of Maryland Medical System Corporation ("UMMS"), moved to dismiss appellants' complaint because, when appellants' initiated their claim in 2003, appellants had filed the type of expert's certificate the *Walzer* Court had ruled inadequate. The circuit court agreed with UMMS and dismissed appellants' suit without prejudice.

The appellants not only appealed the dismissal, but also attempted to salvage their claim by refiling the action after the June 1, 2007, effective date of a savings statute codified as Md.Code (1973, 2006 Repl.Vol., 2007 Supp.), Courts and Judicial Proceedings Article ("CJP"), § 5–119. UMMS then moved to dismiss the refiled action, arguing that the applicable statute of limitations expired prior to commencement of this second action. The Circuit Court for Baltimore City granted the motion to dismiss the refiled action with prejudice, and the appellants noted the present appeal.

We conclude that the plaintiffs' refiling was permitted by CJP § 5–119. Therefore, we shall reverse the judgment of the circuit court and remand the case for further proceedings.

## FACTS AND PROCEDURAL HISTORY

On or about March 6, 2001, Pearline Brown Rice visited the University of Maryland Medical Center, complaining of pain in her left knee. The attending doctor diagnosed her ailment as osteoarthritis. In fact, the cause of the pain was a ruptured, cancerous cyst. Not until several months later was the cyst diagnosed and appropriately treated. In spite of surgical excision, amputation, radiation therapy, and chemotherapy, Rice died of cancer on March 26, 2003.

Based on their theory that the delay in proper diagnosis and treatment caused Pearline Rice's death, appellants initiated an action for damages against the hospital's owner and operator, UMMS, as well as University of Maryland Physicians, P.A., University of Maryland Emergency Medicine Associates, P.A., and three doctors who had treated Pearline Rice at the

hospital. The legal proceedings against UMMS were initiated on November 17, 2003, when the decedent's children—Gloria A. Rice, Zerline Rice Holmes, and Gerald G. Rice ("appellants")—filed a complaint with the Health Care Alternative Dispute Resolution Office ("the Health Care ADR Office").[1] The complaint included a negligence count and a wrongful death count, and alleged that medical malpractice committed by UMMS (and the corporate health care providers and individual doctors) caused the death of appellants' mother.

Section 3–2A–04 of the Courts and Judicial Proceedings Article prescribes the procedure for pursuing medical malpractice claims against health care providers. Initially, a claimant must file a statement of claim with the Health Care ADR Office. CJP § 3–2A–04(a)(1)(i). Section 3–2A–04(b) requires that the claimant file a certificate of a qualified expert, as follows:

> (b) *Filing and service of certificate of qualified expert.*— Unless the sole issue in the claim is lack of informed consent:

> (1)(i)1. Except as provided in item (ii) of this paragraph, a claim or action filed after July 1, 1986, shall be dismissed, without prejudice, if the claimant or plaintiff fails to file a certificate of a qualified expert with the Director [of the Health Care ADR Office] attesting to departure from standards of care, and that the departure from standards of care is the proximate cause of the alleged injury, within 90 days from the date of the complaint;

> \* \* \*

> (3) (i) The attorney representing each party, or the party proceeding pro se, shall file the appropriate certificate with a report of the attesting expert attached.

---

1. At the time appellants filed the claim in November 2003, and until 2005, the name of the Health Care ADR Office was the Health Care Arbitration Office.

On November 17, 2003, appellants filed with the Health Care ADR Office a statement of claim, as well as a one-page document captioned "Claimant's Certificate of Merit and Report" that stated the following:

## CLAIMANT'S CERTIFICATE OF MERIT AND REPORT

I HEREBY CERTIFY, that I have reviewed the medical charts and/or medical records concerning the above named Claimant(s). The care and treatment given Claimant(s) by the Health Care Providers named in these proceedings, in my opinion, and based upon a reasonable degree of medical probability, failed to meet the acceptable standard of care owed a patient under similar or like circumstances and as a direct and/or proximate cause of the failure to meet the acceptable standard of care, the Claimants suffered injuries and/or damages.

I FURTHER CERTIFY, the [sic] I am a licensed medical doctor, I practice medicine and I devote less than 20% of my annual professional activities to those that directly involve testimony in personal injury claims.

The document was signed by Barry L. Singer, M.D.

On December 2, 2003, appellants elected to unilaterally waive arbitration, as permitted by CJP § 3–2A–06B(b), and filed a complaint in the Circuit Court for Baltimore City, requesting a jury trial. No objection to the expert's certificate of merit or report was raised until the end of 2006. In the meantime, the parties completed three years of discovery and conducted a full trial on the merits. The docket entries of the circuit court reflect that a jury trial commenced on April 24, 2006, and continued on April 25, 26, 27, and 28. The docket entries further reflect: "At the end of the pltff's case, deft's motion to dismiss case 'heard and denied' "; and "At the end of the entire case, deft's renewed motion for judgment 'heard and denied.' " On April 28, 2006, the jury returned a verdict in appellants' favor. The circuit court's docket entries reflect: "Judgment on verdict in favor of the plaintiff's in the amount of $11,003,000.00 and costs." On August 25, 2006,

however, the trial court granted UMMS's motion for a new trial, but denied its motion for judgment notwithstanding the verdict. A new trial was scheduled to begin on January 22, 2007.

Before the arrival of the date for the new trial, the Court of Appeals decided the case of *Walzer v. Osborne, supra*, 395 Md. 563, 911 A.2d 427, on November 17, 2006. Reversing the ruling this Court had made in *Osborne v. Walzer*, 167 Md.App. 460, 893 A.2d 654 (2006), the Court of Appeals held that "the language of § 3–2A–04(b) mandates that the certificate of qualified expert be complete, with an attesting expert report attached, and that dismissal of the claim without prejudice is the appropriate remedy when the claimant fails to attach the report in a timely manner." 395 Md. at 567, 911 A.2d 427.

Relying upon the language in *Walzer* relative to dismissal being the appropriate remedy for a failure to attach a separate report to the certificate of merit, UMMS moved, on December 1, 2006, that the circuit court dismiss appellants' complaint on the ground that they had failed to file a separate expert's report when they had filed their certificate of merit back in 2003. Appellants opposed the motion, and also moved to "supplement" their previously filed certificate of merit. On January 18, 2007, the circuit court dismissed the appellants' complaint without prejudice, based upon the opinion in *Walzer*. The court explained its ruling in a written opinion as follows:

In *Walzer v. Osborne*, 395 Md. 563, 911 A.2d 427 (2006), the Court of Appeals recently stated that a court is required to dismiss a medical malpractice action when a claimant fails to attach, in a timely manner, the required attesting expert report to the certificate of qualified expert.

\* \* \*

The Report must be attached to the certificate and the certificate of qualified expert is not complete unless the expert report is filed as an attachment thereto. *Walzer*, 911 A.2d at 429. In the case at bar, Plaintiffs included the word

"Report" in the caption "Claimant's Certificate of Merit and *Report.*" (Emphasis added.) Plaintiffs contend that the addition of the word "Report" brings their certificate into compliance with 3–2A–04(b) of the Maryland Courts and Judicial Proceedings Article. Nevertheless, the contents of the certificate filed in the *Walzer* case are, for all intents and purposes, identical in substance to the contents of "Claimant's Certificate of Merit and Report" filed in this case. *Id.* at 430.... Therefore Plaintiff's contention that their report complies with the statutory requirement fails.

Plaintiff failed to attach the requisite expert report to the certificate of qualified expert in a timely manner. As such, this Court is required to dismiss Plaintiff's medical malpractice claim and hereby does so. *Id.* at 440.

The circuit court also denied appellants' motion to supplement the previously filed certificate of merit.

On February 15, 2007, appellants filed with the circuit court a motion to reconsider its denial of their motion to supplement. That same day, appellants noted an appeal to this Court.

During this same time frame, the General Assembly reacted to the *Walzer* decision by enacting 2007 Laws of Maryland Chapter 324. Codified as CJP § 5–119, the provision states:

(a) Scope.—

(1) This section does not apply to a voluntary dismissal of a civil action or claim by the party who commenced the action or claim.

(2) This section applies only to a civil action claim that is dismissed once for failure to file a report in accordance with § 3–2A–04(b)(3) of this article.

(b) Refiling of claim after dismissal.—If a civil action or claim is commenced by a party within the applicable period of limitations and is dismissed without prejudice, the party may commence a new civil action or claim for the same cause against the same party or parties on or before the later of:

(1) The expiration of the applicable period of limitations;

(2) 60 days from the date of the dismissal; or

(3) August 1, 2007, if the action or claim was dismissed on or after November 17, 2006, but before June 1, 2007.

Chapter 324 specifies in Section 2:

That this act shall be construed to apply only prospectively and may not be applied or interpreted to have any effect on or application to any action or claim dismissed before the effective date of this Act for which a final judgment has been rendered and for which appeals, if any, have been exhausted before the effective date of this Act.

The effective date of the act was June 1, 2007.

On July 23, 2007, while their 2007 appeal to this Court was still pending, appellants filed a second complaint with the Health Care ADR Office. This complaint was identical to the first, but this time was accompanied by a certificate of merit and a separate attached expert's report from Dr. Singer, as required by *Walzer*. This certificate of merit states:

## CERTIFICATE OF QUALIFIED EXPERT

I HEREBY CERTIFY and attest as follows:

I have reviewed medical records relating to Pearline Brown ("the patient"). Based on my review, it is my opinion within a reasonable degree of medical probability, that the University of Maryland Medical System Corporation, acting through its actual and/or apparent agents, servants, and/or employees, including but not limited to, Elyse Michelson, M.D., Annie Lin, M.D.[,] Brian Crites, M.D. (collectively "the Health Care Providers"), departed from the applicable standard of care in the care and treatment of the Patient. It is also my opinion within a reasonable degree of medical probability, that the departure from the applicable standard(s) of care was the proximate cause of the injury/death and/or damages of the Patient.

Attached is a brief statement of my opinion.

I have had experience, provided consultation relating to clinical practice, and/or taught medicine in the field of

Oncology, Internal Medicine, Hematology, Radiology, or a related field of health care, within the last five years of the date of the alleged acts and/or omissions giving rise to this cause of action.

I am board certified in Internal Medicine, Oncology and Hematology, and/or have taught medicine in that specialty or a related field of health care.

I am a licensed medical doctor, I practice medicine and I devote less than 20% of my annual professional activities to those that directly involve testimony in personal injury claims.

The attached expert's report states:

## REPORT OF CERTIFYING PHYSICIAN PURSUANT TO Md. Cts. & Jud. Proc.Code Ann. § 3-2A- 04(b)(3)(i)

I am a licensed medical doctor. I have reviewed relevant medical records and/or other information regarding the care and treatment rendered to Pearline Rice–Brown (patient) at the University of Maryland Medical System during the period October 13, 1998 through March 26, 2003.

On October 13, 1998, Pearline Rice–Brown presented to the out patient clinic at the University of Maryland System (UMMS) complaining of left knee pain intermittently during the prior two months. The attending physician made a note to consider an MRI if the pain persisted. A Plain Film was ordered and done on October 20, 1998, which was interpreted by the radiologist as normal.

On November 10, 1998, the patient presented at UMMS complaining again of persistent left knee pain. On April 27, 1999, patient again presented at UMMS where the record indicates "knee better."

On March 6, 2001, the patient presented at UMMS complaining of Left knee pain. Radiographic studies were not ordered. Dr. Linn [sic] made a clinical diagnosis that "the left knee pain most likely secondary to osteoarthritis.["]

It is my opinion within a reasonable degree of medical probability, that Dr. Lin, UMMS and its agents departed from the applicable standards of care in the care and treatment of the patient. Specifically, it was a departure from the applicable standards of care not to have ordered further radio graphic studies on March 6, 2001, given the patients [sic] history of prior left knee pain. It is further my opinion within a reasonable degree and medical probability that radio graphic studies done on or about March 6, 2001 would have revealed abnormalities that would have warranted a further work up of the patient. A proper work up would have revealed the soft tissue tumor in the patients [sic] left leg. Timely treatment of the sarcoma ultimately diagnosed on October 2, 2001, would have prevented the eventual pulmonary metastasis diagnosed on April 9, 2002, and the patient's death on March 26, 2003.

Incorporated by reference in this report are my trial testimony in the Circuit Court of Baltimore City under case number 24–C–03008837 and my deposition testimony given on August 5, 2005 in the same case.

This report is not, nor is it intended to be, an exhaustive description of all opinions and conclusion, and their bases.

My opinions regarding the Health Care Providers, and departure from the applicable standards of care, may be modified and/or supplemented upon review of additional information and/or documents.

Both documents are signed by Dr. Singer. On July 27, 2007, appellants again waived arbitration unilaterally and filed in the circuit court a second complaint, essentially identical to the one they had filed in 2003.

By coincidence, also on July 27, 2007, the Court of Appeals filed its opinion in *Carroll v. Konits,* 400 Md. 167, 181–82, 929 A.2d 19 (2007), expanding upon its *Walzer* holding. In *Carroll,* the Court described the filing required by CJP § 3–2A–04(b) as a condition precedent to the arbitration that is a condition precedent to litigating a medical malpractice claim. The Court made reference to the enactment of 2007 Laws of

Maryland Chapter 324, but stated that "[t]he issues now being presented in the case *sub judice* are not affected by this new statute." *Id.* at 185–86 n. 15, 929 A.2d 19.

As of July 27, 2007 (the date appellants filed the second complaint), appellants' brief in the appeal that was then pending in this Court was due to be filed on August 15, 2007. Relying upon CJP § 5–119, appellants did not file any brief in the appeal then pending, and because of that, this Court dismissed that appeal pursuant to Rule 8–602(a)(7) on August 22, 2007.

With respect to the circuit court action filed in July 2007, the parties stipulated to the dismissal of all defendants other than UMMS. On December 31, 2007, UMMS moved to dismiss the 2007 complaint pursuant to Maryland Rule 2–322(b), on the ground that both the negligence and wrongful death claims were time-barred, more than three years having passed since UMMS's alleged misdiagnosis and Rice's death. UMMS argued that CJP § 5–119, if applied as appellants seek to do, would violate its constitutional right to due process by resurrecting stale claims against it.

In their response to the motion to dismiss, appellants defended the constitutionality of CJP § 5–119. But appellants also asserted that their claims never expired at all because the filing of the first complaint with the Health Care ADR Office tolled the statute of limitations.

By order docketed on February 4, 2008, the circuit court granted UMMS's motion to dismiss the second complaint with prejudice, without any explanatory opinion. On February 8, 2008, appellants noted the present appeal from that judgment of dismissal.

## DISCUSSION

It appears plain to us that, unless the saving statute is unconstitutional as applied to this case, the provisions of CJP § 5–119 permitted the appellants to refile their claim as they attempted to do. They did not voluntarily dismiss the claim. To the contrary, they assert that the reason they did not

dismiss their previous appeal was to avoid running afoul of the provision that makes CJP § 5–119(b) inapplicable to a claim that has been voluntarily dismissed. And there is no question that their previous claim was "dismissed [only] once for failure to file a report in accordance with [CJP] § 3–2A–04(B)(3)," thereby falling squarely within the embrace of CJP § 5–119(a)(2).

With respect to the requirements of CJP § 5–119(b), there appears to be no dispute that the claim was initially "commenced ... within the applicable period of limitations" and was "dismissed without prejudice." Under such circumstances, CJP § 5–119(b), on its face, permitted appellants to "commence a new civil action or claim for the same cause against the same party or parties on or before ... August 1, 2007," because the appellants' initial claim had been dismissed during the specified interval between November 17, 2006 (the date the *Walzer* opinion was filed), and June 1, 2007 (the effective date of CJP § 5–119).

UMMS contends, however, that the statute cannot be so applied because to do so would violate its right to due process by retroactively reviving a moribund claim against it.[2] UMMS argues in its brief:

> In July 2007, UMMS, like any defendant, had a vested right that no plaintiff could file a stale negligence claim against it based on medical care rendered in 2001 or a stale wrongful death claim based on a death occurring in 2003. The General Assembly is without the power to revive time-barred claims under the Maryland Constitution. The Maryland Court of Appeals "has consistently held that the Maryland Constitution ordinarily precludes the Legislature ... from retroactively creating a cause of action, <u>or reviving a barred cause of action</u>, thereby violating the vested right of

---

**2.** No issue had been raised by appellants with respect to UMMS's standing as an entity to assert a due process challenge to the application of CJP § 5–119, and we shall assume without deciding that the entity had proper standing. *Cf. Moberly v. Herboldsheimer,* 276 Md. 211, 217–18, 345 A.2d 855 (1975) (analyzing whether hospital corporation was created for a municipal purpose).

the defendant." *Dua v. Comcast Cable of Maryland, Inc.,* 370 Md. 604, 633 [805 A.2d 1061] (2002).

■ We agree with UMMS that, when a defendant has survived the period set forth in the statute of limitations without being sued, a legislative attempt to revive the expired claim would violate the defendant's right to due process. *Smith v. Westinghouse Elec. Corp.,* 266 Md. 52, 57, 291 A.2d 452 (1972). In contrast, however, the legislature may extend a statute of limitations that applies to a claim as to which the statute of limitations has not yet expired. *Zitomer v. Slate,* 21 Md.App. 709, 720, 321 A.2d 328 (1974), *rev'd on other grounds,* 275 Md. 534, 341 A.2d 789 (1975). The question in this case is whether appellants' claims had expired, within the meaning of *Smith v. Westinghouse,* before CJP § 5–119 took effect.

UMMS asserts that *Smith v. Westinghouse* is "[t]he Maryland case most squarely on point," because "[t]here, the Court of Appeals held that retroactive revival of a stale claim violates the Maryland Constitution." The *Smith* case is instructive because it does discuss retroactivity, but it is not on point because the case did not involve a claim that had been initially filed within the applicable statute of limitations. In *Smith,* there had been a legislative change in the statute of limitations for initiating a wrongful death claim. Prior to the enactment of 1971 Laws of Maryland Chapter 784, Maryland law required a wrongful death action to be filed within two years after the death of the person giving rise to the claim. Chapter 784 amended that time limit and provided that "every such action shall be commenced within three years after the death." 266 Md. at 55, 291 A.2d 452. The amended limitations period was effective July 1, 1971. Section 2 of Chapter 784 purported to make it applicable retroactively, but, as a result of an apparent drafting error, the provision was worded to leave a three-year gap prior to the effective date, stating: "the provisions of this Act shall be applied prospectively and retroactively to have effect upon or application to any cause of action arising *prior to* [rather than *after* ] July 1, 1968." *Id.* (emphasis added).

The death for which the plaintiffs in the *Smith* case attempted to pursue a wrongful death claim occurred on June 15, 1968—*i.e.*, more than two years before the effective date of Chapter 784. Consequently, the applicable two year statute of limitations expired before the effective date of Chapter 784. The *Smith* plaintiffs nevertheless filed suit on June 9, 1971, within three years after the death, but before the effective date of Chapter 784. The plaintiffs argued that the retroactivity provision of Chapter 784 revived their right to pursue a wrongful death action even though they were beyond the limitations period when they first filed suit. The defendants contended that a statute should not be construed to retroactively create liability, and that it would be a denial of their due process rights to apply the new three year statute of limitations in a manner to revive the previously barred claim. The Court of Appeals agreed with the defendants.

Three years after *Smith* was decided, in *Slate v. Zitomer,* 275 Md. 534, 341 A.2d 789 (1975), the Court of Appeals again considered whether the retroactivity provision in 1971 Laws of Maryland Chapter 784 applied to a wrongful death claim that arose prior to the effective date of the statute that extended the statute of limitations from two to three years. In *Slate,* two separate groups of plaintiffs sought to pursue two different wrongful death claims that both had arisen within the two years before the effective date of Chapter 784, such that the applicable statute of limitations on the dates the actions accrued was two years. In both instances, the plaintiffs waited more than two years to file suit, but filed their suits after the effective date of Chapter 784 and within three years after the respective deaths. The two cases were both addressed in a single appellate opinion of the Court of Appeals.

Without reaching any issue as to the constitutionality of retroactive application of statutes, the Court of Appeals held that both suits were barred because the statute that created the cause of action for wrongful death contains its own limitations provision, and for that reason, "[t]he period of limitations is part of the substantive right of action." *Id.* at 542, 341 A.2d 789. As a matter of statutory construction, the Court held

that the retroactivity provision of Chapter 784 clearly did not apply to these suits because the claims did not arise prior to July 1, 1968. The Court refused to construe the retroactivity provision as a drafting error that granted retroactive effect to causes of action arising subsequent to July 1, 1968, because such a construction would require the Court to give the words of the statute "a meaning exactly the opposite of what they denote. To construe 'prior to' as meaning 'subsequent to,' would be in direct contradiction of the principle that the words used by the Legislature are the primary source for ascertaining legislative intent." *Id.* at 540, 341 A.2d 789.

In a dissenting opinion in *Slate*, Judge Irving A. Levine, joined by Chief Judge Robert C. Murphy, argued that the Court should recognize that the General Assembly had intended to make Chapter 784 apply retroactively to wrongful death actions that arose subsequent to July 1, 1968—*i.e.*, within the three years preceding the effective date of Chapter 784. The dissenting opinion argued that if the statute was so construed, there would be no constitutional impediment to permitting the suits that were filed more than two years, but less than three years, after they arose, if, as in the cases before the Court in *Slate,* the two-year limitations period had not expired before the effective date of Chapter 784. Distinguishing the *Slate* cases (as to which limitations had not run by the time Chapter 784 became effective) from the *Smith* case (as to which limitations had expired prior to the effective date of Chapter 784), Judge Levine explained why the two cases should produce different results:

In *Smith* . . . , this Court declared § 2 of Ch. 784 unconstitutional as literally written, when applied to a case which arose prior to July 1, 1968. . . . Due Process was held to be violated on the ground that the plaintiff's substantive right to bring a wrongful death action had terminated prior to the effective date of the amendment and that the attempt in § 2 to revive this expired substantive right deprived the defendant of a vested property interest.

Thus, *Smith v. Westinghouse Electric, supra,* stands for the principle that due process is violated by a retroactive

application of Ch. 784 to causes of action which had expired under the old limitations provision as of the effective date of the amendment, *i.e.,* to causes of action accruing prior to July 1, 1969.

In the present cases, which arose subsequent to July 1, 1969, the plaintiffs' rights had not yet expired when the amendment took effect on July 1, 1971. Consequently, no vested property interests of the defendants were infringed, and due process was not violated....

For that reason, the dissenters would have affirmed this Court's decision in *Zitomer v. Slate,* 21 Md.App. 709, 321 A.2d 328(1974).

■ In our view, the present case is similarly one in which the due process rights of UMMS were not violated by the appellants' filing of the 2007 action pursuant to CJP § 5–119. The appellants' claims were still in ongoing litigation at the time the 2007 statute took effect, and, as a consequence, their claims had not "expired," and no vested property interests of the UMMS were infringed when the General Assembly enacted a provision that permitted the continued pursuit of such claims. *Cf. Powell v. Calvert County,* 368 Md. 400, 415, 795 A.2d 96 (2002) (no vested right in the grant of a special exception "because the litigation dealing with the special exception had not reached its final conclusion").

We also note that the majority opinion of the Court of Appeals in *Slate* observed, 275 Md. at 540, 341 A.2d 789, that that Court had "set forth rules 'to aid in determining whether a statute is to be applied retrospectively or prospectively' " in *Janda v. Gen. Motors,* 237 Md. 161, 168–69, 205 A.2d 228 (1964). The *Slate* Court stated, 275 Md. at 540–41, 341 A.2d 789: "One principle delineated by the Court in *Janda* was stated as follows: 'Ordinarily a statute affecting matters or rights of substance will not be given a retrospective operation as to transactions, matters and events *not in litigation at the time the statute takes effect* ....' " (Emphasis added.)

In the present case, the appellants' claims against UMMS were "in litigation at the time" CJP § 5–119 took effect. For

that reason, this case is quite different from *Smith* because the appellants in this case initiated their claims within the statute of limitations and remained in litigation with regard to those claims at the time the saving statute became effective.

Our disagreement with UMMS's position that CJP § 5–119 is unconstitutional if it is construed to permit the appellants' refiling hinges upon UMMS's characterization of appellants' claims as being dead as soon as the circuit court entered its order of dismissal with prejudice on January 18, 2007. In our view, the appellants' claims were kept "alive" at that point by the timely filing of an appeal from the judgment that had dismissed the complaint on technical grounds. Although the claims may have been surviving on life support at that point, they were not dead. If the appellate courts had reversed the circuit court's ruling, appellants' claims in that case could have proceeded in the circuit court. Under such circumstances, UMMS had no vested right in avoiding further litigation regarding appellants' claims. The enactment of CJP § 5–119, and appellants' refiling as expressly permitted by that statute, did not impair a vested right because, although UMMS had received a favorable ruling on its motion to dismiss the initial complaint, that case was still on appeal and subject to further proceedings.

It is true that *Walzer* and *Carroll* had placed high hurdles for appellants to clear in order to continue pursuing their claims against UMMS. But neither *Walzer* nor *Carroll* involved the dismissal of a case that had already been through a trial on the merits. Neither *Walzer* nor *Carroll* involved a case that had been tested by, and survived, no less than three motions for judgment. In contrast, in the present case, the question of whether the plaintiffs' case is frivolous—which is the question theoretically addressed by the requirement of a certificate of merit—had been decided in the appellants' favor by at least three rulings of the circuit court that ostensibly confirmed that the appellants had presented evidence of a prima facie case against UMMS.

■ Nor did *Walzer* and *Carroll* rule out the possibility that a defendant might be precluded in some cases by principles of waiver or estoppel from belatedly raising an issue regarding an inadequate certificate of merit. Even a condition precedent can be deemed waived under some circumstances. *See, e.g., Marousek v. Sapra,* 87 Md.App. 205, 219, 589 A.2d 529 (1991) (mutual waiver of health claims arbitration rendered moot any issues concerning the timeliness of the certificate of qualified expert). *See generally Myers v. Kayhoe,* 391 Md. 188, 205, 892 A.2d 520 (2006) ("Waiver, in general, is ' "the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred from circumstances." ' " (quoting *Creveling v. GEICO,* 376 Md. 72, 96, 828 A.2d 229 (2003)). And, unlike a condition precedent which is an integral element of a statutory cause of action, *see, e.g., Smith, supra,* 266 Md. at 56, 291 A.2d 452, the certificate requirement labeled as a condition precedent in *Carroll, supra,* 400 Md. at 181, 929 A.2d 19, is purely procedural and is not part of a statute creating a cause of action.

We express no opinion as to whether the appellants would have been able to raise these or any other specific arguments if they had continued to prosecute their first appeal. We merely point out that the 2007 dismissal of the appellants' complaint did not create a vested right in UMMS in being free of these claims during the time there was an appeal pending, and that appeal was not dismissed until after the effective date of CJP § 5–119. *Cf. Turner v. Kight,* 406 Md. 167, 189, 957 A.2d 984 (2008) (statute permitting refiling in state court within 30 days after claim "is dismissed" by federal court—28 U.S.C. § 1367(d)—interpreted to extend at least through the date of the "issuance of an order of the U.S. Court of Appeals dismissing the appeal or a mandate affirming the dismissal of those claims by the District Court").

Although the procedural "cure" the legislature enacted to provide a grace period for certain suits that were dismissed based on the *Walzer* decision requires the filing of a separate

legal action, the net effect upon the defendants is the same that inheres when a complaint in a pending suit is amended at a point in time that the statute of limitations has expired. Such amendments are permitted under the doctrine of relation back if the amendments do not materially alter the operative factual allegations. Due process is not offended by such amendments. The Court of Appeals described the doctrine of relation back in *Crowe v. Houseworth,* 272 Md. 481, 485–86, 325 A.2d 592 (1974), as follows:

> The modern view seems to be that so long as the operative factual situation remains essentially the same, no new cause of action is stated by a declaration framed on a new theory or invoking different legal principles. As a consequence, the doctrine of relation back is applied, and the intervention of a plea of limitations prevented.

(Citation omitted.)

In the present case, there was no difference between the operative facts of the first complaint and those in the one filed after the effective date of CJP § 5–119. The only difference between the two suits was compliance with the technical requirements of *Walzer* at the time of the second filing. Because such non-substantive amendments are permitted without offending the due process rights of defendants under the doctrine of relation back, we perceive no reason the outcome should be different in the present case where the appellants simply followed the procedural path prescribed by the General Assembly in CJP § 5–119.

In *Crowe, supra,* the Court of Appeals addressed the doctrine of relation back in the context of an attempt to amend the complaint in a pending action after the applicable statute of limitations had expired. The Court said, 272 Md. at 489, 325 A.2d 592:

> [W]e are prepared to adopt the view of Mr. Justice Holmes, speaking for the Supreme Court in *New York Central & H.R.R. Co. v. Kinney,* 260 U.S. 340, 346, 43 S.Ct. 122, 123, 67 L.Ed. 294 (1922), cited with approval in *Doughty v. Prettyman,* [219 Md. 83, 148 A.2d 438 (1959),] when he said:

"... when a defendant has had notice from the beginning that the plaintiff sets up and is trying to enforce a claim against it because of specified conduct, the reasons for the statute of limitations do not exist, and we are of the opinion that a liberal rule should be applied."

So, too, in the present case, are we persuaded that appellants' refiling of their unaltered claim against UMMS, in accordance with the procedure specifically authorized by the General Assembly in CJP § 5–119, should not be barred by the statute of limitations that had not expired when the suit was originally filed.

Because we view the statutory construction of CJP § 5–119 as dispositive, we need not address appellants' claim that principles of equitable tolling would preclude the statute of limitations from being a bar to their 2007 refiling, for which the appellants cite, among other cases, *Swam v. Upper Chesapeake Med. Ctr., Inc.*, 397 Md. 528, 919 A.2d 33 (2007) (refiling in circuit court permitted after plaintiff mistakenly filed a tort action that was not a claim based upon medical malpractice in the Health Care ADR Office).

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED. CASE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**