81 A.3d 620

**Celeste A. PUPPOLO, Personal Representative of the Estate of Nancy Puppolo**

v.

**ADVENTIST HEALTHCARE, INC. et al.**

**No. 1463, Sept. Term, 2012.**

Court of Special Appeals of Maryland.

Dec. 19, 2013.

**518**

520

Stephen Y. Brennan (Iliff, Meredith, Wildberger & Brennan, PC, on the brief), Pasadena, MD, for Appellant.

Kelly H. Hibbert (Benjamin S. Vaughan, Karen Ferretti, Armstrong, Donohue, Ceppos, Vaughan & Rhoades, Chartered, on the brief), Rockville, MD, Steven A. Hamilton (Karen S. Karlin, Gleason, Flynn, Emig & Fogleman, Chartered, on the brief), Rockville, MD, for Appellee.

Panel: ZARNOCH, NAZARIAN, and ARRIE W. DAVIS (Retired, Specially Assigned), JJ.*

ZARNOCH, J.

In this medical malpractice case, Celeste Puppolo ("Puppolo"), in her capacity as personal representative of the estate of Nancy Puppolo ("Mrs. Puppolo"), sued Adventist Healthcare, Inc. ("Adventist") and Dr. Sabyasachi Kar alleging negligence in the death of Mrs. Puppolo. Puppolo now seeks review of an order of the Circuit Court for Montgomery County, which granted Adventist's and Dr. Kar's motions for summary judg-

---

* Judge Timothy E. Meredith did not participate in the Court's decision to report this opinion pursuant to Md. Rule 8–605.1.

ment and granted Adventist's motion to dismiss pursuant to the statute of limitations and for Puppolo's failure to comply with the Maryland Health Care Malpractice Claims Act ("HCMCA"), Md.Code (2006, 2013 Repl. Vol.), Courts & Judicial Proceedings Article ("CJP"), § 3–2A–02. We find no error and therefore affirm the decision of the circuit court.

## FACTUAL BACKGROUND

On August 12, 2006, Mrs. Puppolo, age 81 at the time, arrived at Washington Adventist Hospital ("WAH") by ambulance. The paramedics indicated that she had a stroke the previous night, resulting in right side weakness and general incoherence. The emergency department ordered a CT scan of the head, a chest x-ray, and blood work. Dr. Kar, a hospitalist[1] at WAH, examined Mrs. Puppolo around 7:35 p.m. and wrote an admitting note.[2] A radiologist interpreted the CT scan and concluded that the scan did not show a new stroke or bleeding. Dr. Kar devised a treatment plan that admitted Mrs. Puppolo to the Medical/Surgical Telemetry Unit, ordered an MRI to confirm there was no new stroke, and requested a neurologist to evaluate her condition. Dr. Kar prescribed Lovenox[3] based on her weight to "bridge her anticoagulation and to manage the risk of stroke due to atrial fibrillation." Dr. Kar's shift ended at 8:00 p.m. and he left the hospital. A neurologist saw the patient and agreed with Dr.

---

1. A "hospitalist" specializes in hospital medicine, i.e., the care and treatment of hospitalized patients. *See Barnes v. Greater Baltimore Medical Center, Inc.*, 210 Md.App. 457, 463 n. 4, 63 A.3d 620 (2013).

2. The note indicated that Mrs. Puppolo had altered mental status, possible stroke, dementia, anemia, hyperlipidemia, a history of hypertension, type 2 diabetes, a subtherapeutic international normalized ratio, possible dehydration, coronary artery disease, rate controlled atrial fibrillation, and a history of coronary artery bypass graft surgery.

3. Lovenox is the brand name for enoxaparin, a drug used to prevent blood clots. *Enoxaparin Injection*, MedlinePlus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a601210.html (last visited Dec. 12, 2013).

Kar's plan; the Lovenox was then administered around 9:00 p.m.

The next day, Dr. Shahid Shamim assumed responsibility for Mrs. Puppolo's care. Dr. Shamim had previously treated her on a different occasion, and it was hospital policy to have patients see the same hospitalist. Along with the attending neurologist and other treating providers, Dr. Shamim cared for her for the remainder of her time at WAH. While still in the hospital on August 19, 2006, Mrs. Puppolo suffered a massive intracranial hemorrhage, which caused her to lapse into a coma. Her providers observed the hemorrhaging during an MRI scan the next day. They discontinued the Lovenox and transferred her to the University of Maryland Shock Trauma Center, where she remained in a coma for six weeks. From August 20, 2006 to June 27, 2007, Mrs. Puppolo suffered from complications relating to her hemorrhage, coma, and extended hospitalization. The complications included hospital-acquired bacterial infections, bedsores on her lower back and right heel that resulted in surgeries and toe amputations, numerous bodily contusions, multiple instances of hypoglycemic shock, renal failure, lung collapse, sepsis accompanied by systemic inflammatory response syndrome, and pain and suffering. Mrs. Puppolo ultimately passed away in December 2008.

## LEGAL PROCEEDINGS

On August 12, 2009, Puppolo filed a claim with the Maryland Health Care Alternative Dispute Resolution Office ("HCADRO") against Adventist and Dr. Kar.[4] Puppolo filed a Certificate of Merit and Report prepared by Dr. Joseph Jeret, a neurologist, in October 2009. The parties waived out of arbitration and Puppolo filed a complaint in the Circuit Court for Montgomery County on May 7, 2010, alleging that appellees breached the standard of care when treating her mother.

---

4. Puppolo also included WAH as a Defendant, but this is not an actual legal entity.

Specifically, she alleged that Mrs. Puppolo received an inappropriate dosage of Lovenox from appellees, and that they failed to diagnose her stroke and intercranial bleeding in a timely manner. She alleged that as a proximate cause of their negligence and breach of the standard of care, her mother suffered injuries and damages. After Adventist moved to dismiss for "Deficient Certificate of Qualified Expert and Report," the court, on January 28, 2011, dismissed the complaint against Adventist without prejudice because the court determined that Puppolo's certificate did not specifically identify the licensed professionals at WAH whom she alleged breached the standard of care. The court did not dismiss the complaint as to Dr. Kar. Dr. Kar filed multiple motions to strike Puppolo's medical expert's certificate of merit and report, arguing that a neurologist could not be a qualified expert with respect to a hospitalist. The court denied these motions.

On March 29, 2011, Puppolo filed a second complaint against Adventist in the Circuit Court for Montgomery County. The court consolidated this new complaint against Adventist with the previous complaint against Dr. Kar. On August 25, 2011, Adventist filed a motion to dismiss, arguing that the statute of limitations had expired in August 2009, three years after the alleged malpractice. Adventist also argued that Puppolo did not comply with the HCMCA when she filed the second complaint in circuit court, instead of beginning again before the HCADRO. In addition to the motion to dismiss, Adventist filed a motion for summary judgment, arguing that Puppolo did not identify any expert witnesses in accordance with the court's scheduling order and therefore could not present a *prima facie* case of negligence against Adventist. On December 2, 2011, the court held a hearing and, over Puppolo's opposition, granted both of Adventist's motions.[5]

---

5. Puppolo appealed to this Court to review these decisions, but we dismissed the appeal as premature. *Puppolo v. Adventist Healthcare, Inc.*, No. 2408, Sept. Term 2011 (Md.Ct.Spec.App. April 25, 2012).

On March 26, 2012, Dr. Kar filed a motion to dismiss and a motion for summary judgment. On June 7, the court initially denied these motions, but then, on a motion to reconsider, the court ruled in favor of Dr. Kar because Puppolo conceded that her neurologist expert could not opine on the standard of care for a hospitalist. On June 18, Puppolo filed a motion to alter or amend the court's judgment. Dr. Kar opposed this motion, and on August 24, the court denied Puppolo's motion. Puppolo timely filed her appeal, requesting review of the judgments concerning both Adventist's and Dr. Kar's motions. Additional facts will be provided as necessary in our discussion of the issues.

## QUESTION PRESENTED

Puppolo presents the following questions, which we have rephrased: [6]

1. Did the court err in granting Adventist's and Dr. Kar's motions to dismiss?

2. Did the court err in granting Adventist's and Dr. Kar's motions for summary judgment?

---

**6.** In her brief, Puppolo presents six questions for review:

1. Did Judge Rupp err in granting Adventist's motion to dismiss because CJ § 5–119 permitted Ms. Puppolo to commence a civil action against Adventist in circuit court rather than requiring Ms. Puppolo to commence a claim against Adventist in the HCADRO?

2. Did Judge Rupp err in granting Adventist's motion to dismiss because even if Ms. Puppolo filed in the wrong forum when she acted pursuant to CJ § 5–119, as the criteria recognized by the Court of Appeals for tolling the statute of limitations were met?

3. Did Judge Rupp err in granting Adventist's motion for summary judgment, which was based upon a supposed lack of expert testimony in support Ms. Puppolo's case against Adventist?

4. Did Judge Rupp abuse his discretion in denying the request of Ms. Puppolo's trial counsel that he be allowed to correct any deficiencies regarding identification of Ms. Puppolo's expert witness?

5. Did Judge Rupp err in granting Dr. Kar's motion for summary judgment because Dr. Jeret's testimony was sufficient to support Ms. Puppolo's case against Dr. Kar?

6. Did Judge Rupp abuse his discretion in denying Ms. Puppolo's motion to alter or amend?

3. Did the court abuse its discretion in denying Puppolo's request to correct deficiencies and her motion to alter or amend?

We answer no to each of these questions.

## DISCUSSION

### I. Background

■ We begin with a brief explanation of the HCMCA, which governs procedures for all "claims, suits, and actions . . . by a person against a health care provider for medical injury allegedly suffered by the person in which damages of more than the limit of the concurrent jurisdiction of the District Court are sought." CJP § 3–2A–02(a)(1). "Essentially, the [HCMCA] requires the submission of certain medical malpractice claims to an arbitration panel for an initial assessment before the matter can be submitted to a court of law for a final determination." *Walzer v. Osborne,* 395 Md. 563, 574–75, 911 A.2d 427 (2006) (footnote omitted). Arbitration is a condition precedent under the HCMCA, and it requires that the claimant file a "certificate of a qualified expert within ninety days of the filing of the statement of claims. . . . Besides filing an expert's certificate, a claimant is also required to file with the certificate 'a report of the attesting expert.' " *D'Angelo v. St. Agnes Healthcare, Inc.,* 157 Md.App. 631, 645, 853 A.2d 813 (2004) (Citations omitted). If the parties choose, they can waive the arbitration requirement after the filing of a certificate of expert and report and take the case to the circuit court. CJP § 3–2A–06A.

In 2006, the Court of Appeals held that the failure to attach a proper report to the expert's certificate would result in the case being dismissed without prejudice. *Walzer,* 395 Md. at 585, 911 A.2d 427.[7] In response to the *Walzer* decision, the

---

7. In *Walzer,* the Court noted that the Legislature intended that the certificate of qualified expert consist of both the certificate and the attesting expert's report and stated:

Because the Legislature mandated that the expert report be attached to the certificate of qualified expert, we reject Respondent's argument

General Assembly enacted CJP § 5–119,[8] which "(applies only to a civil action or claim that is dismissed once for failure to file a report in accordance with § 3–2A–04(b)(3) [of CJP.] )." [9]

---

that the mandatory dismissal applies only to situations in which a claimant fails to file a certificate, and not to instances where a claimant files a certificate but fails to attach the report. We see no reason to differentiate these two situations. In as much as the expert report must be attached to the certificate, it is part of the certificate. As we stated above, the certificate of qualified expert is an "indispensable step" in the arbitration process. [*McCready Mem'l Hosp. v. Hauser*, 330 Md. 497, 512, 624 A.2d 1249 (1993)]. While based on somewhat different facts, we agree with the Court of Special Appeals' general statement in [*D'Angelo*, 157 Md.App. at 645, 853 A.2d 813], that "failure to file a proper certificate is tantamount to not having filed a certificate at all."

395 Md. at 582, 911 A.2d 427.

8. CJP § 5–119 states:

 (a)(1) This section does not apply to a voluntary dismissal of a civil action or claim by the party who commenced the action or claim. (2) This section applies only to a civil action or claim that is dismissed once for failure to file a report in accordance with § 3–2A–04(b)(3) of this article.

 (b) If a civil action or claim is commenced by a party within the applicable period of limitations and is dismissed without prejudice, the party may commence a new civil action or claim for the same cause against the same party or parties on or before the later of:

 (1) The expiration of the applicable period of limitations;

 (2) 60 days from the date of the dismissal; or

 (3) August 1, 2007, if the action or claim was dismissed on or after November 17, 2006, but before June 1, 2007.

9. CJP § 3–2A–04(b) states in relevant part:

 Unless the sole issue in the claim is lack of informed consent:

 (1)(i) 1. Except as provided in item (ii) of this paragraph, a claim or action filed after July 1, 1986, shall be dismissed, without prejudice, if the claimant or plaintiff fails to file a certificate of a qualified expert with the Director attesting to departure from standards of care, and that the departure from standards of care is the proximate cause of the alleged injury, within 90 days from the date of the complaint; and

 2. The claimant or plaintiff shall serve a copy of the certificate on all other parties to the claim or action or their attorneys of record in accordance with the Maryland Rules; and

 (ii) In lieu of dismissing the claim or action, the panel chairman or the court shall grant an extension of no more than 90 days for filing the certificate required by this paragraph, if:

 1. The limitations period applicable to the claim or action has expired; and

*Rice v. Univ. of Maryland Med. Sys. Corp.,* 186 Md.App. 551, 557, 975 A.2d 193 (2009). Under CJP § 5–119, if a party's civil action or claim is dismissed without prejudice, the party may commence a new civil action or claim for the same cause against the parties, on or before the later of: the expiration of the applicable period of limitations, sixty days from the date of dismissal, or August 1, 2007 if the dismissal occurred between the *Walzer* decision and the enactment of the statute. CJP § 5–119(b).

In *Carroll v. Konits,* 400 Md. 167, 929 A.2d 19 (2007), the Court of Appeals affirmed the circuit court's dismissal of a malpractice action because of a legally insufficient expert witness report and certificate. *Id.* at 172, 929 A.2d 19. The Court held that the "certificate" was a condition precedent to litigating a medical malpractice claim and that such an action should be dismissed if the certificate did not identify with specificity the licensed professionals against whom the claims were brought and state that the defendants breached the standard of care proximately causing the plaintiff's injuries. *Id.* In a footnote, the Court noted the enactment of CJP § 5–119, but said that "[t]he issues now being presented ... are not affected by this new statute." *Id.* at 185–86, n. 15, 929 A.2d 19.

In *Breslin v. Powell,* the Court of Appeals examined cases that had been waived into circuit court and were then dismissed for a defect in the certificate. 421 Md. 266, 290 n. 20, 26 A.3d 878 (2011). The Court noted that each was dismissed because

> the Certificate is an "indispensable" step in the arbitration process such that arbitration cannot occur without the filing of a proper certificate. Because a claim cannot be in circuit

---

2. The failure to file the certificate was neither willful nor the result of gross negligence.

\* \* \*

(3)(i) The attorney representing each party, or the party proceeding pro se, shall file the appropriate certificate with a report of the attesting expert attached.

(ii) Discovery is available as to the basis of the certificate.

court without meeting all of the requirements for arbitration laid out in CJP § 3–2A–04, including filing a Certificate, filing of a proper certificate is a condition precedent to filing an action in circuit court. . . . Therefore, if a proper Certificate has not been filed, the case should not have been in court in the first place and should be dismissed without prejudice in accordance with the HCMCA.

*Id.* (Citations omitted). *Breslin* also indicated that the certificate requirement applies both to "claims before the arbitration panel as well as actions in the courts." *Id.*

## II. Motion to Dismiss

Before addressing whether the circuit court was correct in dismissing the action against Adventist, we note that both the circuit court and Puppolo viewed CJP § 5–119 as applicable to this case. Adventist now argues that this statute has no relevance here, although it did not take this position below.

Read literally and as a response to *Walzer,* CJP § 5–119 appears to apply only to a failure to file a proper *expert's report* under CJP § 3–2A–04(b)(3), rather than the failure to file a sufficient *certificate of qualified expert* under § 3–2A–04(b)(1). The January 28, 2011 dismissal of Puppolo's claim against Adventist for failure to sufficiently identify the responsible providers in the certificate seems to smack more of a deficiency under § 3–2A–04(b)(1), rather than a failure to comply with § 3–2A–04(b)(3).

It is understandable that the court and the parties might focus on CJP § 5–119. Maryland caselaw has jumbled together both the certificate and report requirements. *See* n. 7, *supra.* Moreover, an insufficiency in the certificate could certainly spill over into the report. Finally, the parties directed the circuit court to CJP § 5–119 and even Adventist captioned its motion to dismiss the initial complaint as one to dismiss "for Deficient Certificate of Qualified Expert *and Report.*" (Emphasis added).

█ Ultimately, we believe there is no need to address the scope of CJP § 5–119, because it does not answer the ultimate

question of whether the January 28, 2011 dismissal required Puppolo to start again before the HCADRO or permitted her to file a new civil action in the circuit court.

The issue is one of statutory interpretation that we review *de novo. Barnes v. Greater Baltimore Med. Ctr., Inc.,* 210 Md.App. 457, 471, 63 A.3d 620 (2013). For the grant of a motion to dismiss, the standard is "whether the trial court was legally correct." *Schisler v. State,* 177 Md.App. 731, 742, 938 A.2d 57 (2007). This Court will "affirm a circuit court's judgment on any ground adequately shown by the record, even one upon which the circuit court has not relied or one that the parties have not raised." *Barnes,* 210 Md.App. at 471, 63 A.3d 620 (Quotation omitted).

Puppolo contends that the circuit court erred in dismissing her March 29, 2011 complaint against Adventist because she filed her new civil action in a forum allowed under CJP § 5–119. She argues that the statute allows her to resurrect her claim as a new civil action rather than beginning again under the HCMCA procedures. She points to the phrase "commence a new civil action or claim for the same cause," and argues that the use of the disjunctive "or" means that a party has "a choice between alternative things."

In addition to its contention that CJP § 5–119 does not apply, Adventist argues that the use of the disjunctive "or" in CJP § 5–119, which deals with a statute of limitations, does not give a party the option to circumvent compliance with the other procedural requirements of HCMCA. In our view, Adventist has the better of the arguments.

Although § 5–119 and § 3–2A–04(b) relate in part to the same subject matter, § 5–119 is the narrower of the statutes. It is primarily a limitations-savings provision. Like § 3–2A–04(b), it applies to both claimants and plaintiffs, to arbitration proceedings and civil actions. However, § 5–119 does not specify where a "cured" civil action/claim is to be filed. On the other hand, § 3–2A–04(b)(1) requires a "claimant or plaintiff" to file a certificate of qualified expert with an attached report under § 3–2A–04(b)(3) "with the Director" of HCA-

DRO. In short, under the latter statute, a plaintiff whose certificate or report is found deficient by a court must return to HCADRO to file anew.

Multiple rules of statutory construction support this interpretation. The plain language of § 3–2A–04(b)(1) specifying where a "plaintiff" in a civil action must file his or her certificate could not be any clearer.

■ Additionally, "[b]ecause the General Assembly is presumed to have intended that all its enactments operate together as a consistent and harmonious body of law, statutes will be interpreted, whenever reasonably possible, to avoid repeal by implication." *Farmers & Merchants Nat. Bank of Hagerstown v. Schlossberg*, 306 Md. 48, 61, 507 A.2d 172 (1986). Puppolo's proffered interpretation of CJP § 5–119 would fly in the face of this tenet.

■ Next, we look at legislative purpose. The purpose of the HCMCA is to "weed out" unmeritorious malpractice claims. *D'Angelo*, 157 Md.App. at 645, 853 A.2d 813. In addition to reducing litigation, the expert certificate and report "assist . . . in evaluating the merit of the health claim or defense." *Walzer*, 395 Md. at 583, 911 A.2d 427. The requirement to file a certificate and report furthers this intent. *Kearney v. Berger*, 416 Md. 628, 658, 7 A.3d 593 (2010). It would not be consistent with this purpose for Puppolo to refile in circuit court without first meeting the requirements of arbitration.

Finally, we look to the consequences of the alternative interpretations. Puppolo's argument would circumvent the arbitration process, but our case law is clear that "[t]he HCMCA's procedural requirements do not become irrelevant when a case is no longer in the HCADRO. [CJP §] 3–2A–02(a)(2) states that '[a]n action or suit [to which the HCMCA applies] may not be brought or pursued in any court of this State except in accordance with [the HCMCA].' " *Kearney*, 416 Md. at 655, 7 A.3d 593. The interpretation advanced by Adventist works to reduce questionable litigation, because a claimant could not file in circuit court without having first

gone through the HCADRO procedures. As we explained in *D'Angelo,* the "failure to file a proper certificate is tantamount to not having filed a certificate at all." 157 Md.App. at 645, 853 A.2d 813. *Breslin* emphasizes the result of this failure: "[i]f a proper certificate has not been filed, the case should not have been in court in the first place and should be dismissed with prejudice in accordance with the HCMCA." 421 Md. at 290, n. 20, 26 A.3d 878. Thus, we hold that neither CJP § 5–119 nor any other provision of law permits Puppolo to re-file her claim in the circuit court without "in the first place" filing a proper certificate in the proceeding before the HCADRO.

Tangential to Puppolo's attack on the circuit court's decision grant to Adventist's motion to dismiss is her claim that her March 29, 2011 complaint tolled the statute of limitations. Adventist responds that the issue was premature in that any limitations/tolling question should be addressed in the first instance by the HCADRO. We agree with Adventist.

█ If, as we have concluded, HCADRO is the proper forum for Puppolo's re-filing against Adventist, both CJP § 3–2A–04(b)(1)(ii) and CJP § 5–119(b) address limitations issues. Thus, HCADRO is the proper forum to determine whether limitations have expired, whether limitations have been tolled, or whether the failure to file a proper certificate is neither willful nor the result of gross negligence. CJP § 3–2A–04(b)(1)(ii)2.[10]

### III. Motion for Summary Judgment

█ To review the second question on the grant of a motion for summary judgment, the standard again is "whether the trial court's grant of the motion was legally correct." *Laing v. Volkswagen of Am., Inc.,* 180 Md.App. 136, 152–53,

---

**10.** Puppolo's contention that the procedural "cure" of § 5–119 is analogous to the relation-back feature of an amended complaint is not correct. A dismissal of the plaintiff's complaint without prejudice does not mean that the case is still pending in the trial court and that the plaintiff may amend his or her complaint in the same action; rather, the case is fully terminated. *Mohiuddin v. Doctors Billing & Mgmt. Solutions, Inc.,* 196 Md.App. 439, 454, 9 A.3d 859 (2011).

949 A.2d 26 (2008) (Citations omitted). A motion for summary judgment is properly granted if "there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." Md. Rule 2–501(f). We must determine "whether a fair minded jury could find for the plaintiff in light of the pleadings and the evidence presented, and there must be more than a scintilla of evidence in order to proceed to trial." *Laing,* 180 Md.App. at 153, 949 A.2d 26 (Citations omitted). When "the facts are susceptible to more than one inference, the court must view the inferences in the light most favorable to the non-moving party." *Id.* Generally, this Court "may uphold the grant of a summary judgment only on the grounds relied on by the trial court." *Ashton v. Brown,* 339 Md. 70, 80, 660 A.2d 447 (1995).

Puppolo contends that the court incorrectly determined that there was a lack of expert testimony. She argues that Adventist received her expert witness's written reports and there was still a month of discovery remaining when the summary judgment motion was granted. Adventist responds that Puppolo failed to identify the expert witnesses that she planned to call against Adventist at trial within the time limits of the scheduling order.

The circuit court should have rejected Dr. Kar's motion for summary judgment, Puppolo contends, because her expert witness's testimony was sufficient to support her claim of a breach in the standard of care by Dr. Kar. She argues that her expert witness's medical experience made him qualified to offer opinions, even though the expert witness did not practice as a hospitalist like Dr. Kar. Dr. Kar contends that Puppolo's expert did not have the experience to give opinions on the standard of care by a hospitalist. He argues that the additional skill of a neurologist and training in reading MRIs should not be compared to Dr. Kar's conduct. Additionally, Dr. Kar contends that even if Puppolo's expert witness were used, Puppolo failed to establish a case of negligence against him.

We hold that the circuit court was legally correct in granting summary judgment to Adventist and Dr. Kar. In a medical malpractice case, "a plaintiff may establish a *prima facie* case for medical negligence by proving (1) the applicable standard of care; (2) that this standard has been violated; and (3) that this violation caused the complained of harm." *Sterling v. Johns Hopkins Hosp.*, 145 Md.App. 161, 169, 802 A.2d 440 (2002) (Quotation omitted). Medical malpractice cases are usually complex in nature, and thus require expert testimony to establish the breach of standard of care. *Barnes*, 210 Md.App. at 481, 63 A.3d 620.

Here, Puppolo was unable to prove the applicable standard of care for Adventist and Dr. Kar. With regard to Adventist, Puppolo failed to identify an expert, and therefore there was no expert testimony to establish the standard of care. The court stated, "[T]his is a case that can't go forward without an expert, and there's no expert in the case." Regarding Dr. Kar, Puppolo conceded on the record that her expert could not testify "with respect to the standard of care that is expected of a hospitalist such as Dr. Kar." Because she could not show the applicable standard of care, she could not prove malpractice. Therefore, the court was correct as matter of law to grant summary judgment to Adventist and Dr. Kar.

## IV. Request to Correct Deficiencies and Motion to Alter or Amend

With respect to the third question presented, one part is related to deficiencies in discovery. Generally, "[o]ur review of the trial court's resolution of a discovery dispute is quite narrow." *Klupt v. Krongard*, 126 Md.App. 179, 193, 728 A.2d 727 (1999) (Quotation omitted). For the denial of a motion to alter or amend, we review for an abuse of discretion. *Miller v. Mathias*, 428 Md. 419, 438, 52 A.3d 53 (2012). An abuse of discretion is found when a decision is "clearly against the logic and effect of facts and inferences before the court," or "where no reasonable person would take the view adopted by the [trial] court." *In re Adoption/Guardianship No. 3598*, 347 Md. 295, 312, 701 A.2d 110 (1997) (Quotations omitted).

Puppolo argues that the court abused its discretion by not allowing her to fix the deficiencies in her identification of the expert witness during the discovery period in the case against Adventist. Even if she did miss the scheduling deadlines, a denial with significant consequences such as effectively dismissing her claim should only be done in more egregious situations. Puppolo also argues that the court abused its discretion by not granting her motion to alter or amend in the case against Dr. Kar. In support of this argument, she points to her expert's affidavit that she attached to her motion, which "amplified" the expert's deposition testimony.

 We hold that the circuit court did not abuse its discretion in either circumstance. Puppolo did not comply with the scheduling order in identifying an expert, nor did she respond to the motion for summary judgment which was pending for failure to identify an expert, and the court noted that this lack of response was "consistent with the history in this case." During the trial, Puppolo conceded that although she had an intention to comply, "it has not been done to date." Although the court did not directly address Puppolo's oral request for "one last opportunity to be able to fully comply," the court's granting of Adventist's motion for summary judgment had the effect of denying the oral motion. We are reluctant to second-guess a trial court's decision regarding discovery. *Klupt*, 126 Md.App. at 193, 728 A.2d 727. It is clear from the court's discussion on the record that its decision was not "clearly against the logic and effect of facts and inferences before the court." *In re Adoption/Guardianship No. 3598*, 347 Md. at 312, 701 A.2d 110. Therefore, there was no abuse of discretion.

 The court also did not abuse its discretion in denying Puppolo's motion to alter or amend. Puppolo had already conceded that her expert could not testify to the standard of care of Dr. Kar. The "amplified" affidavit did not include information from events occurring after the entry of judgment; it only revised her expert's statements of his qualifications. The statements still referred to her expert's neurologi-

cal knowledge, which Puppolo had previously conceded made him unqualified to provide a standard of care for a hospitalist. This is not a situation "where no reasonable person would take the view adopted by the [trial] court." *Id.* Therefore, the court did not abuse its discretion in denying the motion to alter or amend.

For all of these reasons we affirm the judgment of the circuit court.

**JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**