7 A.3d 593

Gail A. KEARNEY, Individually, etc., et al.

v.

Robert S. BERGER.

No. 125, Sept. Term, 2009.

Court of Appeals of Maryland.

Oct. 28, 2010.

630

632

Barry J. Nace (Jonathan B. Nace, Paulson & Nace, PLLC, Washington, D.C.), on brief, for appellants.

Thomas C. Marriner (Wharton, Levin, Ehrmantraut & Klein, P.A., Annapolis), on brief, for appellee.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, BARBERA and JOHN C. ELDRIDGE (Retired, specially assigned), JJ.

GREENE, J.

This is a medical malpractice case filed by the Estate of Kevin M. Kearney and four of Kearney's surviving family members ("Petitioners") against Dr. Robert Berger ("Dr. Berger"). Petitioners allege that Dr. Berger should have, but did not, perform a timely biopsy when he examined a mole on Kearney and that the mole later proved to be melanoma, a type of skin cancer. Kearney subsequently died, and Petitioners assert that Dr. Berger's failure to perform a timely biopsy led to Kearney's death. Dr. Berger disputes his liability.

Although Dr. Berger disputes that he is liable, his liability is not the issue in this appeal. We have instead been asked to determine whether Petitioners, in maintaining their cause of action, satisfied the requirements of the Health Care Malpractice Claims Act ("HCMCA"), Maryland Code (1974, 2006 Repl. Vol., 2009 Supp.), §§ 3–2A–01 to 3–2A–10 of the Courts and Judicial Proceedings Article,[1] a statute that requires arbitration of certain claims filed against health care providers. In particular, Dr. Berger argues that Petitioners failed to file a sufficient certificate of qualified expert, a document that the HCMCA typically requires. In response, Petitioners contend either that their certificate was sufficient, that Dr. Berger waived his challenge to the certificate's sufficiency, or that there is good cause to allow them to file a sufficient certificate even though the deadline for filing a certificate has passed. Upon our review of the case and applicable law, we shall rule in Dr. Berger's favor.

---

1. All statutory citations in this opinion are to Maryland Code, Courts and Judicial Proceedings Article (1974, 2006 Repl. Vol., 2009 Supp.), unless otherwise noted.

## HISTORY OF THE CASE

The procedural history of this case is both complex and central to the issues before us. The case began in the Health Claims Arbitration and Dispute Resolution Office ("HCADRO"). On August 9, 2004, Petitioners initiated their action against Dr. Berger in the HCADRO, alleging that Dr. Berger failed to perform a timely biopsy on a mole, which later proved to be melanoma, when he examined Kearney during the years 2001 and 2002. Petitioners argued that this alleged failure on Dr. Berger's part was the proximate cause of Kearney's death, which occurred on August 18, 2003.

Petitioners filed a "Claim Form" in the HCADRO. Attached to the "Claim Form" was a document describing Petitioners' claims and a document that stated, in full:

Certification of Max H. Cohen, M.D. with respect to the wrongful death claim of the estate of Kevin M. Kearney and survival claims of Kearney family members against Robert S. Berger, M.D.

I am a licensed physician in the state of Maryland and have reviewed the medical record regarding the treatment of Mr. Kearney by Dr. Robert S. Berger, and his office staff, with offices at 11355 Pembrooke Square, Waldorf, Maryland. It is my opinion that the care rendered fell below the standards of care applicable to the treatment of Mr. Kearney, who had malignant melanoma, and such deviation from the standards was the proximate cause of injury and damage to Mr. Kearney, who subsequently died as a result of the melanoma.

Dated July 21, 2004

/s/

Max. H. Cohen, M.D.

This certificate was intended to satisfy § 3–2A–04(b), which typically requires HCADRO claimants to file a "certificate of qualified expert" with the Director of the HCADRO.

Dr. Berger responded to Petitioners' claim, filing a response in the HCADRO. Six months later, Dr. Berger filed a "Waiv-

er of Arbitration" in the HCADRO, pursuant to § 3–2A–06B, which permits a HCADRO defendant to waive arbitration unilaterally at any time after the claimant has filed the certificate of qualified expert that § 3–2A–04(b) requires. The waiver stated that Dr. Berger "hereby elects to waive arbitration" in regard to Petitioners' claims. Dr. Berger filed this waiver, and then the HCADRO Director entered an order to transfer the record for the case to the Circuit Court for Anne Arundel County.

Petitioners filed their complaint, in the present case, in the Circuit Court for Anne Arundel County on July 11, 2005. In their complaint, Petitioners asserted claims substantially similar to those they had asserted in the HCADRO, specifically wrongful death and survival claims against Dr. Berger for his failure to perform a biopsy on Kearney's mole. Petitioners also stated that they "and Dr. Berger both timely filed with the [HCADRO] certificates of qualified expert as required by . . . § 3–2A–04(b)." Dr. Berger filed an answer in which he generally denied any liability, and the parties proceeded with pre-trial matters.

Approximately 18 months later, on January 4, 2007, Dr. Berger filed a Motion to Dismiss. In the motion, Dr. Berger argued that Petitioners had failed to attach "a report of the attesting expert" with their certificate of qualified expert, as required by § 3–2A–04(b)(3). The timing of Dr. Berger's motion was not coincidental. Dr. Berger relied on our decision in *Walzer v. Osborne,* decided several weeks before Dr. Berger's motion, in which we held that a certificate of qualified expert is "incomplete, and therefore insufficient, . . . without the report [of the attesting expert] attached" and that "failure to file a proper certificate is tantamount to not having filed a certificate at all." *Walzer,* 395 Md. 563, 579–82, 911 A.2d 427, 436–38 (2006) (quoting *D'Angelo v. St. Agnes,* 157 Md.App. 631, 645, 853 A.2d 813, 822, *cert. denied,* 384 Md. 158, 862 A.2d 993 (2004)). We also held "that the Legislature intended a mandatory sanction of dismissal when a claimant fails to attach the expert report." *Walzer,* 395 Md. at 581, 911 A.2d

at 437. Accordingly, Dr. Berger argued that the trial court, must dismiss Petitioners' claims.

Petitioners responded to the "Motion to Dismiss" by filing, in the Circuit Court and the HCADRO, a "Motion for Extension of Time to Amend Certificate of Merit." In each venue, Petitioners asked for additional time to amend the certificate based on §§ 3–2A–04(b)(5) and 3–2A–05(j), both of which allow for an extension of time to file the certificate of qualified expert "for good cause shown." Petitioners argued that good cause existed because they had filed the certificate in the manner that attorneys generally understood to be required before *Walzer*, because Dr. Berger had not previously objected to the certificate, and because Dr. Berger filed his certificate in the same "procedural manner" as Petitioners. In response, Dr. Berger asserted several arguments why the certificate was insufficient, including that it failed to state that the attesting expert satisfied § 3–2A–04(b)(4) [2] and failed to identify who had allegedly violated the standard of care. Dr. Berger also argued that Petitioners could not be granted a good cause extension because, in his view, § 3–2A–04 did not allow such extensions when more than 180 days had passed after the filing of the claim. Dr. Berger further contended that, regardless, Petitioners had not shown good cause for the extension.

Petitioners also filed a response, in the Circuit Court, to Dr. Berger's "Motion to Dismiss." Petitioners asserted a number of arguments for why dismissal was not warranted, including that the trial court should defer to the HCADRO's implied ruling on the sufficiency of the certificate and that Dr. Berger had waived the certificate requirement when he unilaterally waived arbitration. Petitioners later filed a supplemental response, arguing, among other things, that Dr. Berger had waived his argument by not specifically objecting to the

2. Section 3–2A–04(b)(4) states that the expert who attests in the certificate of qualified expert "may not devote annually more than 20 percent of the expert's professional activities to activities that directly involve testimony in personal injury claims."

sufficiency of the certificate in his answer and that *Walzer* should have only prospective effect.

The trial court held a motions hearing on April 23, 2007.[3] At the end of the hearing, the trial judge agreed with Dr. Berger that the certificate's insufficiency required dismissal without prejudice and that a good cause extension could only be granted within 180 days from the filing of the claims in the HCADRO. The judge stated:

I'm going to grant the motion because I think I have to. I am doing it, in case the record is not already clear, on the basis of the *Walzer* opinion[,] which I think applies here.

I think the facts [in *Walzer*] are identical to the situation that we have here. My understanding of the law is ... that I can't extend, give them a further extension beyond the 180 days. And I have gone to that single provision that I thought might have helped[, § 3–2A–04(b)(1)(ii),] where the statute of limitations has passed.

And I believe the case makes very clear right here that even that provision will not be helpful to a claimant under the circumstances where there was no request to file for the extension within the initial 180 days from the date of the claim to the [HCADRO].

So for those reasons I feel that I have to dismiss the case without prejudice. I understand under these circumstances it may be with prejudice, but that is the ruling that I will make. And we will see what the Court of Special Appeals says.

The judge further ruled that "the certificate was also inadequate for the reasons stated in [§ 3–2A–04(b)(4)]." [4]

---

**3.** The Director of the HCADRO subsequently denied Petitioners' request for an extension of time on May 2, 2007. In the order, the Director stated that "the Circuit Court of Anne Arundel County has jurisdiction to grant or deny Plaintiff Kearney's Motion for Extension of Time."

**4.** Petitioners subsequently filed a "Motion for Reconsideration," arguing that the trial court had mistakenly considered the certificate requirement from § 3–2A–04(b) to be a subject-matter jurisdiction requirement, instead of a condition precedent, and that the court should

Petitioners entered a notice of appeal and the case proceeded to the Court of Special Appeals. On appeal, Petitioners presented the following questions for review:

I. When a plaintiff specifically avers to having met a required precondition to filing a claim, does a defendant waive objections to that averment by failing to deny it by either pre-answer motion or in the defendant's answer itself?

II. Did the trial court err in determining that appellants' motion for extension of time must be denied as untimely; and if so, does good cause exist to grant the requested extension when appellants relied—among other things—on a government official's ruling or lack thereof?

*Kearney v. Berger,* 182 Md.App. 186, 189, 957 A.2d 682, 683 (2008) (*Kearney I*).

The Court of Special Appeals ruled in favor of Dr. Berger on the first question and in favor of Petitioners on the second. The court first concluded that Dr. Berger could not have waived the certificate requirement because that requirement is a condition precedent that cannot be waived. *Kearney I,* 182 Md.App. at 193–95, 957 A.2d at 685–87. The court further concluded that a good cause extension could be granted at any time under §§ 3–2A–04(b)(5) and 3–2A–05(j), not just within the 180 days following the filing of a claim in the HCADRO. *Kearney I,* 182 Md.App. at 195–200, 957 A.2d at 687–90. The trial judge did not determine whether Petitioners had good cause for an extension; therefore, the Court of Special Appeals remanded the case for resolution of that issue. *Kearney I,* 182 Md.App. at 200, 957 A.2d at 690. Dr. Berger petitioned this Court for a writ of certiorari on the question of the 180-day limitation, but we denied the petition, *Berger v. Kearney,* 406 Md. 580, 961 A.2d 553 (2008), and Petitioners did not ask us to review any aspect of the decision.

---

not dismiss the case based on the alleged failure to meet the condition precedent. The trial judge denied the motion.

The trial court once again took up the case. The court held a hearing on May 8, 2009, to determine whether there was good cause to grant Petitioners' request for an extension of time to amend their certificate. Counsel for Petitioners asserted that there was good cause, arguing that they could not have known that the certificate was inadequate prior to this Court's decision in *Walzer*. Counsel also argued that they had relied on the Director of the HCADRO's decision to transfer the case to the Circuit Court as an indication that the certificate was sufficient. Counsel for Dr. Berger argued that *Walzer* did not change the statutorily-imposed expert report requirement, so Petitioners should have been aware of it, and that there was nothing else that would have constituted good cause for an extension. Counsel also argued that Petitioners could not claim reliance on the Director's decision to transfer the case because that decision was only ministerial.

The trial judge once again agreed with Dr. Berger, stating:

So taking a lesson from what I've just learned in the Court of Special Appeals' opinion in my case, I believe I have to go with the statute. The statute had the requirement in it. [*Walzer*] certainly clarified that that was the requirement all along. They did not comply with that. And I find that that is the only reason that they have given me today for a failure to comply with the statute, is that basically that is the way everyone was operating.

So I can't find that that is good cause. And I am not going to just use common sense and say, you know, certainly the fact that everyone was operating under this misconception would be good cause, when there is clearly a law that specified exactly what had to be done and what was required.

So given that I find that's the only reason given by plaintiffs that would, in their view, constitute good cause, and I find that it is not good cause, I'm going to make a finding that there is no good cause.

Accordingly, the trial judge again dismissed Petitioners' claims without prejudice. Petitioners also asked the court to

rule on whether the certificate was sufficient, specifically in regard to § 3–2A–04(b)(4), but the court declined to make that ruling.

Petitioners once again filed a notice of appeal and the case returned to the Court of Special Appeals. Before the parties filed their briefs, Petitioners asked the intermediate appellate court to stay the proceedings because of another claim Petitioners filed against Dr. Berger in the Circuit Court for Anne Arundel County. Petitioners explained that following the trial court's initial dismissal of the case, in 2007, they re-filed their case in the HCADRO pursuant to § 5–119 [5] and that the new case proceeded to the Circuit Court. Dr. Berger argued that the present appeal should proceed before the second case, and the Court of Special Appeals agreed.

The parties then submitted briefs to the intermediate appellate court, but we issued a writ of certiorari on our own motion before the parties could present oral arguments to that court. *Kearney v. Berger,* 411 Md. 598, 984 A.2d 243 (2009). The parties subsequently presented oral arguments to this Court on three issues:

1. Did the trial court abuse its discretion in ruling that Petitioners did not have good cause for an extension of time under §§ 3–2A–04(b)(5) and 3–2A–05(j)?

2. Did [Dr. Berger] waive his statutory right to object to the sufficiency of the arbitration proceedings when he unilaterally waived arbitration and failed to plead any objection in his answer?

---

**5.** Section 5–119, enacted following our decision in *Walzer v. Osborne,* 395 Md. 563, 911 A.2d 427 (2006), extends the statute of limitations for any "civil action or claim that is dismissed once for failure to file a report in accordance with § 3–2A–04(b)(3) of this article." Among other things, the statute extends the statute of limitations for 60 days beyond the date of the dismissal. § 5–119(b)(2); *see also Barber v. Catholic Health,* 180 Md.App. 409, 430, 951 A.2d 857, 869, *cert. denied,* 406 Md. 192, 957 A.2d 999 (2008) (explaining that § 5–119 "permits a plaintiff to re-file within sixty days if a case is dismissed for failure to file an adequate report under … § 3–2A–04(b)(3)").

3. Did the trial court err in determining that [Petitioners'] certificate of qualified expert was insufficient?

## DISCUSSION

## I.

### Law of the Case Doctrine

We begin by addressing the "law of the case" doctrine as it applies to the present case. Dr. Berger argues in his brief, which he submitted to the Court of Special Appeals before we issued a writ of certiorari on our own motion, that the law of the case doctrine prevents Petitioners from raising two of their arguments. We disagree.

Maryland courts follow the law of the case doctrine. *Turner v. Housing Authority*, 364 Md. 24, 31–35, 770 A.2d 671, 676–78 (2001). We have explained the doctrine many times, recently in *Reier v. Dept. of Assessments,* where we said:

Once this Court has ruled upon a question properly presented on an appeal, or, if the ruling be contrary to a question that could have been raised and argued in that appeal on the then state of the record, as aforesaid, such a ruling becomes the "law of the case" and is binding on the litigants and [courts] alike, unless changed or modified after reargument, and neither the questions decided [nor] the ones that could have been raised and decided are available to be raised in a subsequent appeal.

397 Md. 2, 21, 915 A.2d 970, 981 (2007) (quoting *Fid.–Balto. Nat. Bank v. John Hancock Mut. Life Ins. Co.,* 217 Md. 367, 372, 142 A.2d 796, 798 (1958)).

The law of the case doctrine rests on sound judicial policy. The doctrine ensures that "litigants cannot try their cases piecemeal." *Dill v. Avery,* 305 Md. 206, 213, 502 A.2d 1051, 1054 (1986) (quoting *Fid.–Balto. Nat. Bank,* 217 Md. at 371–72, 142 A.2d at 798). Without it, "any party to a suit could institute as many successive appeals as the fiction of his imagination could produce new reasons to assign as to why his side of the case should prevail, and the litigation would never

terminate." *Reier,* 397 Md. at 21, 915 A.2d at 981 (quoting *Fid.-Balto. Nat. Bank,* 217 Md. at 372, 142 A.2d at 798).

The law of the case doctrine does not, however, always prevent litigants from raising arguments that were, or could have been, raised in previous appeals in the same case. In *Loveday v. State,* we considered an issue similar to the one before us in the present case: "whether a judgment of the Court of Special Appeals on an earlier appeal in the same case constitutes the law of the case on review by this Court of a second judgment in the same case where the first judgment was not appealed." 296 Md. 226, 230, 462 A.2d 58, 60 (1983). To answer that question, we considered the law of the case doctrine in other states and the federal courts and concluded, consistent with many other jurisdictions and the U.S. Supreme Court, that "the law of the case doctrine does not apply to this [C]ourt which is required to review judgments of subordinate courts." *Loveday,* 296 Md. at 230–34, 462 A.2d at 60–61. We explained that "[t]o hold otherwise, would thwart the purpose of Maryland Code (1980 Repl. Vol.), § 12–201 of the Courts and Judicial Proceedings Article which grants power to this Court to review judgments of the Court of Special Appeals." *Loveday,* 296 Md. at 234, 462 A.2d at 61.

We have repeatedly affirmed our decision in *Loveday. In re Levon A.,* 361 Md. 626, 636, 762 A.2d 572, 576–77 (2000); *Brewster v. Woodhaven Building,* 360 Md. 602, 621–22, 759 A.2d 738, 748 (2000); *Walbert v. Walbert,* 310 Md. 657, 663, 531 A.2d 291, 293–94 (1987); *Public Serv. Comm'n v. Md. People's Counsel,* 309 Md. 1, 7, 522 A.2d 369, 372 (1987); *Houghton v. County Comm'rs of Kent Co.,* 305 Md. 407, 414, 504 A.2d 1145, 1149 (1986). We succinctly explained the current status of the *Loveday* exception to the law of the case doctrine in *In re Levon A.:*

> [A]lthough, in a second appeal, the Court of Special Appeals might properly apply the "law of the case" doctrine and decline to review an issue that was, or could have been, raised in an earlier appeal in the same case, that doctrine would not preclude this Court, in the second appeal, from reviewing that issue. To rule otherwise, we noted, would

thwart this Court's statutory authority to review the judgments of the Court of Special Appeals.

361 Md. at 636, 762 A.2d at 577.

Dr. Berger's argument, in the present case, is that the law of the case doctrine prohibits Petitioners from raising two of their arguments: that Dr. Berger waived his objection to the sufficiency of the certificate of qualified expert and that the certificate was sufficient. In most cases, we would easily dismiss Dr. Berger's argument because of the clear rule set forth in *Loveday* and its progeny. The present case, however, is slightly different than most. We took this case before the Court of Special Appeals rendered a decision, pursuant to the statutory power granted to us in § 12–201. Our Rules state that "[e]xcept as otherwise provided in Rule 8–304(c), when the Court of Appeals issues a writ of certiorari to review a case pending in the Court of Special Appeals before a decision has been rendered by [the intermediate appellate court], the Court of Appeals will consider those issues that would have been cognizable by the Court of Special Appeals." Md. Rule 8–131(b)(2).

We are therefore presented with conflicting authority that we must reconcile. Our case law states that we are not bound by a Court of Special Appeals decision in a previous appeal within the same case, even if the Court of Special Appeals would have been bound by the same previous decision. *In re Levon A.*, 361 Md. at 636, 762 A.2d at 577; *Loveday*, 296 Md. at 234, 462 A.2d at 61–62. Rule 8–131(b)(2), however, instructs us to consider issues that would have been cognizable by the Court of Special Appeals when we issue a writ of certiorari before that court renders a decision. In effect, when we take a case on "bypass" of the intermediate appellate court, we step into its shoes in deciding the appeal, usually with all attendant obligations as that court observes. The law of the case doctrine may have prohibited Petitioners from raising some issues in the Court of Special Appeals, so Rule 8–131(b)(2) could be interpreted to preclude us from considering those arguments.

We will resolve this conflict by holding that the law of the case doctrine does not constrain us. The present case demonstrates the problem with applying the law of the case doctrine when we have issued a writ of certiorari on our own motion. We would be unable to consider all of Petitioners' arguments only because we took the case pursuant to our statutory power under § 12–201. Pursuant to *Loveday,* however, we would be able to consider all of Petitioners' arguments if we instead allowed the Court of Special Appeals to rule on the case and then granted Petitioners' request for certiorari. This waste of judicial resources would not only "thwart the purpose" of the review power granted to us under § 12–201, but also would conflict with our own rule that we "may decide . . . an issue if necessary or desirable to guide the trial court." Rule 8–131(a); *see Loveday,* 296 Md. at 234, 462 A.2d at 61 (declining to apply the law of the case doctrine because it "would thwart the purpose of [the statute that] grants power to this Court to review judgments of the Court of Special Appeals"). We certainly did not have this result in mind when we enacted Rule 8–131(b)(2).

■ We will not read Rule 8–131(b)(2) as thwarting our statutory power, granted to us by the Legislature in § 12–201, to review cases before the Court of Special Appeals has rendered a decision in the case. Accordingly, we hold that the *Loveday* exception to the law of the case doctrine applies both when we are reviewing a decision of the Court of Special Appeals and when we issue a writ of certiorari on our own motion pursuant to Rule 8–131(b)(2).

## II.

### Sufficiency of the Certificate of Qualified Expert

We now turn to Petitioners' arguments. Petitioners assert that the original certificate of qualified expert that they filed in the HCADRO satisfies the requirements of § 3–2A–04(b). Dr. Berger contends that the certificate is insufficient for a number of reasons: it does not establish that the attesting expert satisfies § 3–2A–04(b)(4), it does not specifically identify the health care providers who allegedly violated the stan-

dard of care, it does not indicate what the standard of care was or how Dr. Berger departed from it, it does not contain opinions expressed to a reasonable degree of medical probability, and it does not include a report of Petitioners' attesting expert. We conclude that the certificate is insufficient, but only for the reason that it does not include a report of Petitioners' attesting expert. The certificate fails to indicate what the standard of care was or how Dr. Berger departed from it, which is part of the expert report requirement. *See Walzer,* 395 Md. at 579–80, 911 A.2d at 436 (explaining that "the General Assembly intended for the attesting expert report to be a part of the certificate of qualified expert and not for the report and certificate to constitute two separate and distinct documents").

For certain claims filed against a health care provider, § 3–2A–04(b)(1)(i)(1) requires the "claimant or plaintiff . . . to file a certificate of a qualified expert with the Director [of the HCADRO] attesting to departure from standards of care, and that the departure from standards of care is the proximate cause of the alleged injury, within 90 days from the date of the complaint." If the claimant or plaintiff fails to file such a certificate, the "claim or action . . . shall be dismissed, without prejudice." § 3–2A–04(b)(1)(i)(1). We have explained that the Legislature created this certificate requirement to help weed out non-meritorious claims. *Carroll v. Konits,* 400 Md. 167, 196, 929 A.2d 19, 37 (2007); *see also D'Angelo,* 157 Md.App. at 645, 853 A.2d at 822.

In *Walzer,* the defendant argued that the plaintiff's certificate of qualified expert was insufficient because it did not include a report from the attesting expert. We focused on the plain language of § 3–2A–04(b)(3), which states that "[t]he attorney representing each party, or the party proceeding pro se, shall file the appropriate certificate with a report of the attesting expert attached" to the certificate. *Walzer,* 395 Md. at 579, 911 A.2d at 436. We held that this language demonstrated "that the General Assembly intended for the certificate of qualified expert to consist of both the certificate and the attesting expert report, rendering incomplete, and there-

fore insufficient, a certificate of qualified expert filed without the report attached." *Walzer,* 395 Md. at 579, 911 A.2d at 436. We further held that the trial court must dismiss a claim if a certificate of qualified expert is required and no report is attached. *Walzer,* 395 Md. at 581, 911 A.2d at 437.

Section 3–2A–04(b) provides a number of other requirements in regard to the certificate of qualified expert. For example, plaintiffs are required to serve a copy of the certificate on the other parties or their attorneys. § 3–2A–04(b)(1)(i)2. If the defendant disputes liability, he or she must also file a certificate of qualified expert or the claim "may be adjudicated in favor of the claimant or plaintiff on the issue of liability." § 3–2A–04(b)(2). Of particular importance to the present case, § 3–2A–04(b)(4) states:

> A health care provider who attests in a certificate of a qualified expert or who testifies in relation to a proceeding before an arbitration panel or a court concerning compliance with or departure from standards of care may not devote annually more than 20 percent of the expert's professional activities to activities that directly involve testimony in personal injury claims.

With this background in mind, we turn to the alleged deficiencies in Petitioners' certificate of qualified expert.

## A.

### Report of the Attesting Expert

■ Dr. Berger asserts that Petitioners' certificate of qualified expert is insufficient because it does not include a report of the attesting expert. There appears to be no dispute between the parties that the certificate must include such a report, nor could there be any such dispute after our decision in *Walzer,* 395 Md. at 579, 911 A.2d at 436. *See also Carroll,* 400 Md. at 179, 929 A.2d at 26–27 ("[The HCMCA] also requires that the certificate be filed with a 'report of the attesting expert attached.' ").

There also appears to be no dispute that there is no expert report attached to Petitioners' certificate. The certificate is attached to a "Claim Form" that identifies the claimants and

the health care provider against whom the claims were being filed. Also attached to the "Claim Form" is a document, not attested to by an expert, that describes the claims against Dr. Berger. The certificate itself sets forth information about Petitioners' attesting expert, identifies the records the expert reviewed, and states the expert's "opinion that the care rendered fell below the standards of care applicable to the treatment of Mr. Kearney" and that "such deviation from the standards was the proximate cause of injury and damage to Mr. Kearney, who subsequently died as a result of the melanoma."

The information included in Petitioners' certificate of qualified expert satisfies the plain language of § 3–2A–04(b)(1)(i)1. Section 3–2A–04(b)(1)(i)(1) requires that the expert "attest[ ] to departure from standards of care, and that the departure from standard of care is the proximate cause of the alleged injury." *See also Carroll*, 400 Md. at 194, 929 A.2d at 35 ("According to the plain language, a [c]ertificate, under § 3–2A–04(b), must contain the qualified expert's affirmation as to two separate conditions—(1) that the defendant-physician departed from the standards of care, and (2) that such a departure was the proximate cause of plaintiff's alleged injury.") As we held in *Walzer*, however, the certificate must do more than satisfy § 3–2A–04(b)(1)(i)1. The certificate must also satisfy § 3–2A–04(b)(3), which requires that a report from the attesting expert must be attached to the certificate. There is no such report attached to Petitioners' certificate and, accordingly, we agree with Dr. Berger that Petitioners' certificate is insufficient.

## B.

### Health Care Provider Who Allegedly Violated the Standard of Care

Dr. Berger also asserts that Petitioners' certificate is insufficient because it does not specify who allegedly violated the standard of care. We recognize that the certificate must provide this information, but we disagree that Petitioners' certificate fails to do so.

648

We have required that the certificate of qualified expert must identify the health care providers who allegedly violated the standard of care. In *Carroll*, we held that a certificate of qualified expert "must identify with specificity, the defendant(s) ... against whom the claims are brought, include a statement that the defendant(s) breached the applicable standard of care, and that such a departure from the standard of care was the proximate cause of the plaintiff's injuries." 400 Md. at 172, 929 A.2d at 22. We explained that this information is necessary because it "is consistent with the General Assembly's intent to avoid non-meritorious claims" and without it "the [c]ertificate would be rendered useless" because "it would be impossible for the opposing party, the HCADRO, and the courts to evaluate whether a physician, or a particular physician out of several, breached the standard of care." *Carroll*, 400 Md. at 196, 929 A.2d at 37; *see also D'Angelo*, 157 Md.App. at 645–46, 853 A.2d at 822 (holding that "the certificate requirement would amount to a useless formality that would in no way help weed out non[-]meritorious claims" if the claimant or plaintiff were not required to specifically identify the person who allegedly violated the standard of care).

Petitioners have satisfied this requirement from *Carroll*. The problem with the certificate in *Carroll* was that it named five physicians, two of whom were named defendants in the case, but it did not specifically state which physicians had allegedly violated the standard of care. 400 Md. at 196–97, 929 A.2d at 37. As a result, the certificate was too ambiguous to allow the defendant, the HCADRO, or the courts to determine whether any particular physicians violated the standard of care. In the present case, however, there can be no confusion about who allegedly breached the standard of care. Dr. Berger is the only defendant in the case, the only defendant named on the "Claim Form," and the only person whose conduct is at issue in Petitioners' description of their claims and in their complaint. There can be no mistake that the certificate refers to Dr. Berger.

Dr. Berger is not specifically identified in the certificate as the health care provider who allegedly violated the standard of

care, but that would not cause Dr. Berger, the HCADRO, or the courts any difficulty in evaluating whether Dr. Berger violated the standard of care. Accordingly, Petitioners' certificate sufficiently identifies the defendant against whom the claims were brought, in accordance with *Carroll.*

## C.

### Standard of Care

█ Dr. Berger raises another argument based on *Carroll.* He contends that Petitioners' certificate of qualified expert is insufficient because it "does not indicate what the standard of care was or how the health care providers departed from it." We agree with Dr. Berger that this information must be in a certificate and that it is absent from Petitioners' certificate.

In *Carroll,* we explained that the certificate of qualified expert was insufficient because it "failed to state what the standard of care was or *how* [the defendants] departed from it." 400 Md. at 197, 929 A.2d at 37. We detailed at length the certificate's deficiencies, which included its failure to state the standard of care, to explain what the doctors should have done differently, and to include a number of details about the doctors' alleged failures. *Carroll,* 400 Md. at 197–98, 929 A.2d at 37–38. We concluded that the certificate did "not even come close to complying with the statutory requirement" and that "the Circuit Court was correct in dismissing the case on the grounds that Carroll failed to file a proper [c]ertificate." *Carroll,* 400 Md. at 198, 929 A.2d at 38. This conclusion was consistent with *Walzer,* in which we explained that the report of the attesting expert, which is part of the certificate of qualified expert, "must explain how or why the physician failed or did not fail to meet the standard of care and include some details supporting the certificate of qualified expert" because it would "help weed out non-meritorious claims and assist the plaintiff or defendant in evaluating the merit of the health claim or defense." 395 Md. at 583, 911 A.2d at 438–39. Together, *Carroll* and *Walzer* show that a claimant or plaintiff whose certificate fails to state the applicable standard of care

and how the defendant allegedly departed from that standard of care is equivalent to a failure to satisfy the report requirement and, accordingly, renders the certificate insufficient.

Petitioners' certificate clearly lacks the type of information that we found lacking from the certificate in *Carroll*. As we have explained, there is no expert report in this case that includes this information. Nor does the certificate otherwise meet this requirement; the entire portion of the certificate referring to the standard of care consists of the expert's "opinion that the care rendered fell below the standards of care applicable to the treatment of Mr. Kearney, who had malignant melanoma" and the expert's conclusion, with no explanation, that "such deviation from the standards was the proximate cause of injury and damage to Mr. Kearney, who subsequently died as a result of the melanoma." Like the certificate in *Carroll*, this certificate does not explain what the standard of care was, what Dr. Berger should have done to satisfy that standard of care, or include any details at all about what happened when Dr. Berger allegedly violated the standard of care. Without this information, Petitioners' certificate could not be used to evaluate whether Dr. Berger violated the standard of care and is therefore deficient.

## D.

### Section 3–2A–04(b)(4)

Dr. Berger argues that a certificate of qualified expert must state that the attesting expert satisfies the requirements of § 3–2A–04(b)(4). The trial court agreed with Dr. Berger on this point, but we disagree that such a statement is necessary.

An attesting expert must satisfy § 3–2A–04(b)(4), which limits the amount of time the expert may dedicate to testimony in personal injury claims. The statute does not, however, require that the certificate state that the attesting expert satisfies this limitation. This lack of an explicit requirement contrasts sharply with the explicit requirement in § 3–2A–04(b)(3), which states that an expert report "shall" be attached to the certificate. *See Walzer*, 395 Md. at 579–80, 911 A.2d at 436–37 (noting the importance of the unambiguous, plain

language of § 3–2A–04(b)(3)). If the Legislature had meant for the certificate to state that the attesting expert satisfies § 3–2A–04(b)(4), it certainly could have said so in the statute.

■ We also decline to read such a requirement into the statute because it would not further the certificate's purpose. Our decision in *Carroll* shows that the certificate of qualified expert must include information necessary for evaluating whether the defendant breached the standard of care. 400 Md. at 196, 929 A.2d at 37. This information is necessary because otherwise the certificate could not be used to weed out non-meritorious claims. *Carroll,* 400 Md. at 196, 929 A.2d at 37. The 20 percent rule contained in § 3–2A–04(b)(4), however, has nothing to do with whether a claim has merit. That rule is instead intended to prevent "professional witnesses" from serving as attesting experts in suits against health care providers. *Witte v. Azarian,* 369 Md. 518, 534, 801 A.2d 160, 170 (2002); *see also Kinsey v. Women's Surgery Ctr., LLC,* 584 F.Supp.2d 746, 749 (D.Md.2008) ("The required *qualifications* of the expert are specified in a separate subsection of the statute, § 3–2A–04(b)(4), and there is no requirement that the expert's qualifications be stated in the [c]ertificate."). Unlike the standard of care and the specific identity of the person who allegedly violated the standard of care, there is no reason why the expert's qualifications are necessary, or even helpful, for determining whether the defendant violated the standard of care. Accordingly, we conclude that Petitioners' certificate is not insufficient for failing to state that the attesting expert satisfies § 3–2A–04(b)(4).

### E.

### Opinions Expressed to a Reasonable Degree of Medical Probability

■ Finally, Dr. Berger argues that a certificate of qualified expert must contain opinions expressed to a reasonable degree of medical probability. We again disagree.

■ In a medical malpractice case, Maryland law requires that an expert's testimony "be held to a 'reasonable degree of medical probability' to ensure that the expert's

opinion is more than speculation or conjecture." *Carroll,* 400 Md. at 210–11, 929 A.2d at 45 (Greene, J., dissenting) (quoting *Karl v. Davis,* 100 Md.App. 42, 51–52, 639 A.2d 214, 219 (1994)). Whether the expert's testimony is sufficient because it meets this requirement, or whether the testimony is otherwise admissible, is a question for the trial court. *Baltimore v. Theiss,* 354 Md. 234, 261–62, 729 A.2d 965, 980 (1999) (Rodowsky, J., concurring) (citing Md. Rule 5–104(a)). An HCADRO arbitration panel may also refuse to consider expert testimony if the testimony fails to meet this requirement or is not otherwise admissible. *Karl,* 100 Md.App. at 52–53, 639 A.2d at 219.

Dr. Berger asks us to read § 3–2A–04(b) as requiring that the certificate of qualified expert contain opinions expressed to a reasonable degree of medical probability. He essentially argues that the HCADRO or trial court must make an initial determination, on the face of the certificate, as to whether the expert's opinion meets this standard. If the expert's opinion does not meet this standard, Dr. Berger argues, the claimant or plaintiff has not established a prima facie case of medical negligence and the certificate is insufficient. Once again, Dr. Berger argues for a requirement that cannot be found in § 3–2A–04(b).[6] The question is therefore whether this requirement is necessary to evaluate whether Dr. Berger has violated the standard of care. *Carroll,* 400 Md. at 196, 929 A.2d at 37.

Dr. Berger has misinterpreted § 3–2A–04(b). As we have explained, the certificate requirement is intended to help weed out non-meritorious claims. *Carroll,* 400 Md. at 196, 929 A.2d at 37. The claimant or plaintiff is not required to prove his or her case with the certificate, but instead must present an expert's opinion that provides enough information to support the conclusion that the defendant may have violated the standard of care. For this purpose, the HCADRO or trial

---

**6.** The defendant in *Carroll v. Konits* argued that the certificate of qualified expert in that case was deficient because it "failed to articulate opinions to a reasonable degree of medical probability, as is required by Maryland law." 400 Md. 167, 188, 929 A.2d 19, 32 (2007). The majority opinion in *Carroll* did not address that argument.

court accepts the assertions in the certificate, just as courts accept a plaintiff's well-pleaded facts and allegations in a complaint. *See RRC v. BAA,* 413 Md. 638, 643–44, 994 A.2d 430, 433–34 (2010) (discussing the appropriate review of a motion to dismiss). If the HCADRO or trial court determines that some information required by § 3–2A–04(b) is missing from the certificate, dismissal is required because the claimant or plaintiff has necessarily failed to establish that the claim has merit. In this manner, the certificate requirement allows for the weeding out of a non-meritorious claim. If the certificate includes the information that § 3–2A–04(b) requires, then the claimant or plaintiff has shown that the claim may have merit and dismissal pursuant to § 3–2A–04(b) is inappropriate.

At the early stage when the certificate is filed, neither the HCADRO nor the trial court is in a position to make determinations about the strength of the expert's opinions. Those determinations arise later. In further proceedings, the defendant may challenge the expert's opinions on the basis that they are not expressed to a reasonable degree of medical probability. *See Karl,* 100 Md.App. at 52–53, 639 A.2d at 219 (approving the dismissal of a claim in the HCADRO when the claimant's expert did not express his opinions to a reasonable degree of medical probability). The claimant or plaintiff may also provide additional expert testimony that supplements or even changes the expert's opinions as stated in the certificate. *Debbas v. Nelson,* 389 Md. 364, 382–83, 885 A.2d 802, 813–14 (2005). The evaluation of the expert's opinion, however, is separate from whether the certificate satisfies § 3–2A–04(b). A claim therefore need not be dismissed pursuant to § 3–2A–04(b) just because the claimant or plaintiff's certificate of qualified expert does not contain opinions expressed explicitly to a reasonable degree of medical probability.

## III.

### Waiver of Dr. Berger's Challenge to the Certificate's Sufficiency

We have concluded that Petitioners' certificate of qualified expert is insufficient, but Petitioners argue that this

should not lead to the dismissal of their claim. Petitioners contend that Dr. Berger cannot challenge the sufficiency of the certificate because, in their view, Dr. Berger waived this challenge when he unilaterally waived arbitration in the HCA-DRO and failed to specifically deny, in his answer to the complaint or by pre-trial motion, that Petitioners had satisfied the requirement. In response, Dr. Berger argues that, as the Court of Special Appeals held in *Kearney I*, the certificate requirement is a condition precedent that cannot be waived. Dr. Berger also argues that he did not waive his challenge to the certificate's sufficiency because he included a general denial in his answer to the complaint. We conclude that Dr. Berger did not waive his challenge to the certificate.

As we have discussed in this opinion, the HCMCA sets forth specific procedures that must be followed in regard to any case to which the HCMCA applies. One explicit requirement of the HCMCA is that the claimant or plaintiff must file a certificate of qualified expert before a party may unilaterally waive HCADRO arbitration. Specifically, § 3-2A-06B sets forth the procedures by which either a claimant or defendant may unilaterally waive HCADRO arbitration. *See Goodwich v. Nolan*, 343 Md. 130, 149 n. 13, 680 A.2d 1040, 1049 n. 13 (1996) (noting that waiver "may be accomplished unilaterally, by either the claimant(s) or defendant(s), after the claimant has filed the certificate of qualified expert required by § 3-2A-04(b)"). The unilateral waiver procedures, contained within a section of the HCMCA titled "Waiver of arbitration after filing certificate of qualified expert," state that "any claimant may waive arbitration at any time *after filing the certificate of qualified expert required by § 3-2A-04(b)* .... " § 3-2A-06B(b)(1) (emphasis added). Similarly, "[a]ny defendant may waive arbitration at any time *after the claimant has filed the certificate of qualified expert required by § 3-2A-04(b)* .... " § 3-2A-06B(c)(1) (emphasis added).[7] Section 3-2A-06B(a)

---

7. In a case of unilateral waiver, the certificate of qualified expert can be filed with either the HCADRO or, if filed after a party has elected to

further demonstrates that these requirements are mandatory, stating that the "provisions of [§ 3–2A–06B] shall govern all further proceedings on any claim" when a party unilaterally waives arbitration. Finally, the HCMCA specifically establishes that a party may raise "the defense of failure to comply with the procedures required under [the HCMCA]." § 3–2A–10. As these provisions show, the certificate requirement applies even when a party unilaterally waives arbitration, and failure to satisfy this procedural requirement is a valid defense.

The HCMCA's procedural requirements do not become irrelevant when a case is no longer in the HCADRO. Section 3–2A–02(a)(2) states that "[a]n action or suit [to which the HCMCA applies] may not be brought or pursued in any court of this State except in accordance with [the HCMCA]." [8] Accordingly, we have repeatedly held that adherence to the HCMCA's procedures is necessary to maintain a claim that is subject to the HCMCA. *See, e.g., Carroll,* 400 Md. at 181, 929 A.2d at 28 ("[I]f a proper [c]ertificate has not been filed, the condition precedent to maintain the action has not been met and dismissal is required by the [s]tatute once the allotted time period [for filing the certificate] has elapsed."); *McCready Memorial Hosp. v. Hauser,* 330 Md. 497, 512, 624 A.2d 1249, 1257 (1993) (explaining that the HCMCA "mandates that claimants arbitrate their claims before the [HCADRO] as a condition precedent to maintaining a suit in a

---

waive arbitration, "in the appropriate circuit court or United States District Court." § 3–2A–06B(b)(3), (c)(3).

**8.** Petitioners contend that the HCMCA "specifies what may be reviewed by a [c]ircuit [c]ourt, and it does not include the review of the sufficiency of either a certificate of qualified expert or the attesting expert report." Petitioners ignore, however, two statutory provisions identified above: § 3–2A–02(a)(2), which states that "[a]n action or suit [to which the HCMCA applies] may not be brought or pursued in any court of this State except in accordance with [the HCMCA]," and § 3–2A–10, which specifically recognizes "the defense of failure to comply with the procedures required under [the HCMCA]." As we explain in this opinion, one of the HCMCA's procedural requirements is that a certificate of qualified expert must be filed before arbitration is unilaterally waived. § 3–2A–06B(b)(1), (c)(1).

656

circuit court" and that "filing ... an expert's certificate is an indispensable step in the [HCADRO] arbitration process"); *Su v. Weaver*, 313 Md. 370, 377, 545 A.2d 692, 695 (1988) (explaining that the HCMCA requires "a malpractice claim to be submitted to a mandatory arbitration proceeding as a condition precedent to maintaining such an action in the circuit court."); *Cherry v. Brothers*, 306 Md. 84, 88–89, 507 A.2d 613, 615 (1986) ("[C]ompliance with the procedures to invoke judicial review as set forth in § 3–2A–06 is a condition precedent to the maintenance of a medical malpractice court action."); *Tranen v. Aziz*, 304 Md. 605, 612, 500 A.2d 636, 639 (1985) ("[T]he statutory context of these [HCMCA] directives plainly shows that compliance with them is mandatory and that noncompliance mandates dismissal."); *Bailey v. Woel*, 302 Md. 38, 45, 485 A.2d 265, 268 (1984) (holding that "a plaintiff who presents no evidence before a medical malpractice arbitration panel has not satisfied the condition precedent of submitting his claim to arbitration prior to instituting court action"). We have further held that the parties to a suit cannot agree to ignore the HCMCA's requirements, holding in *Oxtoby v. McGowan* that "[c]ompliance with the [HCMCA's] precondition to court suit may not be avoided by express agreement of the parties or by mere oversight, at least prior to final judgment and final determination of all direct appeals." 294 Md. 83, 92, 447 A.2d 860, 865 (1982). Simply put, a claim to which the HCMCA applies cannot be brought or pursued in any court unless the parties comply with the HCMCA's procedural requirements.

Our decision in *Carroll* shows that a certificate of qualified expert must be filed in order to maintain a court action, even after a party unilaterally waives HCADRO arbitration. In *Carroll*, like the present case, arbitration was unilaterally waived and, in the circuit court, the defendant requested dismissal of the case because the certificate of qualified expert filed in the case was insufficient. *Carroll*, 400 Md. at 175–76, 929 A.2d at 24. We explained that we had not previously considered whether filing a certificate of qualified expert is a condition precedent to maintaining court action. *Carroll*, 400

Md. at 181, 929 A.2d at 27. To answer that question, we looked to our decision in *McCready,* in which we stated that "[a] claimant's filing of an expert's certificate is an indispensable step in the [HCADRO] arbitration process." *McCready,* 330 Md. at 512, 624 A.2d at 1257. We reasoned in *Carroll* "that the filing of a proper [c]ertificate operates as a condition precedent to filing a claim in Circuit Court because arbitration is a condition precedent to filing a claim in a Circuit Court and because ... it must occur or the condition precedent is not satisfied." 400 Md. at 181, 929 A.2d at 28. We accordingly held that "if a proper [c]ertificate has not been filed, the condition precedent to maintain the action has not been met and dismissal is required by the [s]tatute once the allotted time period has elapsed." *Carroll,* 400 Md. at 181, 929 A.2d at 28; *see also Robinson v. Pleet,* 76 Md.App. 173, 182, 544 A.2d 1, 5 (1988) (holding that, pursuant to § 3–2A–04(b)(1), a "claim 'shall be dismissed' if the certificate is not filed timely"). Our decision in *Carroll* therefore established that a case must be dismissed if the plaintiff has not filed a certificate of qualified expert, even if one of the parties has unilaterally waived HCADRO arbitration.[9]

Our adherence to the HCMCA's certificate requirement is not mere formalism. The requirement that the claimant or

---

**9.** Our conclusion in *Carroll* is consistent with the Court of Special Appeals' decision in *Marousek v. Sapra,* 87 Md.App. 205, 589 A.2d 529 (1991). In *Marousek,* Judge Bell, now Chief Judge of this Court, writing for the Court of Special Appeals, concluded that a waiver of arbitration rendered moot a challenge to the certificate of qualified expert. 87 Md.App. at 218–20, 589 A.2d at 535–36. *Marousek,* however, concerned the mutual waiver provision of the HCMCA, through which both parties in an HCADRO case can agree to waive arbitration. 87 Md.App. at 217, 589 A.2d at 534. Unlike the unilateral waiver provision, which had not been enacted when *Marousek* was decided, the mutual waiver provision does not require, as a precondition, the filing of a certificate of qualified expert. *Marousek,* 87 Md.App. at 219–20, 589 A.2d at 535; § 3–2A–06A (providing for mutual waiver); *see also Azarian v. Witte,* 140 Md.App. 70, 84, 779 A.2d 1043, 1051 (2001), *aff'd,* 369 Md. 518, 801 A.2d 160 (2002) (concluding that *Marousek* did not apply in a case of unilateral waiver). The difference in these two waiver provisions makes *Marousek* inapplicable in cases of unilateral waiver.

plaintiff file a certificate of qualified expert serves an important purpose, even in cases of unilateral waiver. The Legislature established the HCADRO arbitration process "to reduce the number of medical malpractice court suits by screening out frivolous claims at the arbitration level." *Newell v. Richards*, 323 Md. 717, 732, 594 A.2d 1152, 1159 (1991). There is no doubt that the certificate of qualified expert is an indispensable part of this process because it helps weed out non-meritorious claims. *Carroll*, 400 Md. at 196, 929 A.2d at 37; *McCready*, 330 Md. at 512, 624 A.2d at 1257. The certificate serves this purpose not only by helping the litigants, the HCADRO, and the trial court determine whether a claimant or plaintiff's claim has merit, but also by requiring the claimant or plaintiff to support the claim with an expert's opinion.[10] *See* Terry L. Trimble, The Maryland Survey: 1994–1995: Recent Developments: The Maryland General Assembly: Torts, 55 Md. L.Rev. 893, 920 (1996) (explaining that "the single best deterrent [to filing a medical malpractice suit], the certificate of [qualified expert] requirement, remains in effect, even for those cases that waive [arbitration]"). Requiring that the plaintiff file a certificate, even in cases of unilateral waiver, furthers the Legislature's intent.

The question before us now is whether Dr. Berger waived the certificate requirement when he unilaterally waived arbitration of Petitioners' claim. In *Carroll*, we stated in a footnote that "[a] condition precedent cannot be waived under the common law and a failure to satisfy it can be raised at any time because the action itself is fatally flawed if the condition

---

**10.** The present case demonstrates the practical effect of being required to obtain a certificate of qualified expert. Petitioners' original counsel stated in his motion to withdraw that he "consider[ed] it improper to pursue [Petitioners'] claims in reliance on the opinion of" the expert who attested to Petitioners' certificate of qualified expert. Counsel explained that he had reached this conclusion because he was "concerned that [the expert's] representation, and [the expert's] certification pursuant to the [HCMCA,] were false." He accordingly stated that "being unable to engage any other reliable expert who shares [the expert's] opinion, present counsel is unable to further assist [Petitioners]." We, of course, pass no judgment on the validity of the expert's opinion.

is not satisfied." 400 Md. at 182 n. 12, 929 A.2d at 28 n. 12 (quoting *Georgia–Pacific v. Benjamin,* 394 Md. 59, 84, 904 A.2d 511, 526 (2006)); *see also University System v. Mooney,* 407 Md. 390, 412, 966 A.2d 418, 431 (2009) (explaining that an action is "fatally flawed" if a condition precedent is not met (quoting *Rios v. Montgomery County,* 386 Md. 104, 127–28, 872 A.2d 1, 14 (2005))). In *Kearney I,* the Court of Special Appeals focused on this statement, holding "that the filing of a certificate operates as a condition precedent, which cannot be waived, and therefore, [Dr. Berger] did not waive any objection by failing to generally or specifically deny the specific averment [that the parties had satisfied the certificate requirement]." 182 Md.App. at 195, 957 A.2d at 687.[11]

To decide the present case, we need not determine whether or not a party can ever waive the certificate requirement.[12] Instead, we need only determine whether the actions or inaction of Dr. Berger and his attorney constituted a waiver of the requirement. We have defined "waiver" as "the intentional relinquishment of a known right." *Taylor v. Mandel,* 402 Md. 109, 135, 935 A.2d 671, 686 (2007). Petitioners have presented two ways in which they contend that Dr. Berger relinquished his right to object to the certificate's sufficiency. First, they argue that Dr. Berger did so when he waived

---

11. Petitioners argue that the Court of Special Appeals came to the wrong conclusion in *Kearney v. Berger,* 182 Md.App. 186, 957 A.2d 682 (2008) (*Kearney I*). In particular, Petitioners argue that the intermediate appellate court's later decision in *Rice v. UMMS,* 186 Md. App. 551, 975 A.2d 193, *cert. granted,* 411 Md. 355, 983 A.2d 431 (2009), demonstrates that the certificate requirement can sometimes be waived. Because we conclude that Dr. Berger did not waive the certificate requirement, we need not decide whether he could have waived that requirement under a different set of circumstances. Furthermore, *Rice* inappropriately relied on *Marousek,* which is inapplicable to cases of unilateral waiver. *See supra* note 9; *Rice,* 186 Md.App. at 568, 975 A.2d at 203 (citing *Marousek* for the proposition that "[e]ven a condition precedent can be deemed waived under some circumstances").

12. To be certain, the provisions of the HCMCA do not expressly provide for waiver of the certificate requirement, except to the extent that the mutual waiver provisions do not state that a certificate is necessary in cases of mutual waiver. *See supra* note 9.

arbitration. To this end, Petitioners ask in their brief, "If Dr. Berger did not waive these objections [to the certificate's sufficiency], what did he waive?" The answer, which should be clear from our discussion above, is that Dr. Berger waived "arbitration of a claim." This is what § 3–2A–06B explicitly authorizes. The effect of this waiver was that the claims would not be heard in the HCADRO and would instead be heard in the Circuit Court. This waiver of arbitration did not, however, waive Dr. Berger's challenge to the certificate's sufficiency; to the contrary, § 3–2A–06B requires that a certificate of qualified expert be filed, so the waiver of arbitration did not affect that requirement. Dr. Berger's waiver of arbitration had nothing to do with whether Petitioners' certificate was sufficient, and, accordingly, this waiver did not constitute a waiver of Dr. Berger's right to challenge the certificate's sufficiency.

Petitioners' second argument is that Dr. Berger waived his challenge to the certificate's sufficiency when he failed to specifically deny Petitioners' averment, made in their complaint, that the parties had "timely filed with the [HCADRO] certificates of qualified experts as required by ... § 3–2A–04(b)." The Maryland Rules do not support this argument. Rule 2–323(d) states that "[w]hen the action in any count is for breach of contract, debt, or tort and the claim for relief is for money only, a party may answer that count by a general denial of liability." Petitioners' claims are actions for tort and their claims for relief are for money only. Pursuant to Rule 2–323(d), Dr. Berger was only required to answer Petitioners' claims by a general denial of liability, which he did.[13]

---

13. Dr. Berger argues that his challenge to the certificate "was permissive and could be raised at any time." For this argument, he cites Maryland Rule 2–322(b), which permits a party to raise a lack of subject matter jurisdiction "in the answer, or in any other appropriate manner after [an] answer is filed." We have, however, explicitly rejected the notion that failure to satisfy the HCMCA procedures divests a trial court of subject matter jurisdiction. *Oxtoby v. McGowan*, 294 Md. 83, 91, 447 A.2d 860, 864–65 (1982) ("The Act ... does not take away the subject matter jurisdiction of a circuit court to hear and render judgments in cases involving claims which fall within the Act.").

The HCMCA and our case law establish that, in cases where a party unilaterally waives HCADRO arbitration of a claim, a certificate of qualified expert must be filed. We conclude that Dr. Berger did not waive his challenge to whether Petitioners satisfied that requirement when he unilaterally waived arbitration. We also conclude that the general denial of liability in Dr. Berger's answer was sufficient to deny that Petitioners had satisfied the certificate requirement. Instead of waiving his challenge to the certificate's sufficiency, Dr. Berger properly raised "the defense of failure to comply with the procedures required under [the HCMCA]," as § 3–2A–10 explicitly permits.

## IV.

### Good Cause

 Finally, Petitioners argue that the trial judge committed an abuse of discretion when she concluded that there was no good cause to extend the deadline for filing the certificate of qualified expert. Petitioners assert several reasons why good cause exists; Dr. Berger argues that those reasons are not sufficient. We agree with Dr. Berger and conclude that there was no good cause to extend the deadline.

Section 3–2A–04(b)(1)(i) 1 requires dismissal of a claim if the claimants or plaintiffs do not file a certificate of qualified expert "within 90 days from the date of the [filing of the] complaint." There is, however, some flexibility in this deadline. The panel chairman or court "shall" extend the deadline by "no more than" an additional 90 days if "[t]he limitations period applicable to the claim or action has expired" and "[t]he failure to file the certificate was neither willful nor the result of gross negligence." § 3–2A–04(b)(1)(ii). We have interpreted this language as requiring a 90–day extension, subject to a motion to dismiss from the defendant, even if there is no formal request from the claimant or plaintiff. *McCready,* 330 Md. at 510–11, 624 A.2d at 1255–56. The HCMCA also mandates that a further extension of the filing deadline "shall be granted for good cause shown." § 3–2A–04(b)(5); *see also*

§ 3–2A–05(j) (granting the Director of the HCADRO or panel chairman authority to, "for good cause shown, . . . lengthen or shorten the time limitations prescribed in . . . § 3–2A–04"). We have explained that the HCMCA's good cause provisions "require the claimant to establish good cause and do not permit an extension without such a showing, but, . . . [the provisions] 'are silent as to the timing of a request, and they do not expressly limit the length of any extension.'" *Navarro–Monzo v. Washington Adventist*, 380 Md. 195, 203, 844 A.2d 406, 410–11 (2004) (quoting *McCready*, 330 Md. at 508, 624 A.2d at 1255).[14] We have described these deadline extension provisions as "escape valves" for "the harshness of the penalty . . . for failing to file a certificate within the initial 90–day period." *Navarro–Monzo*, 380 Md. at 204, 844 A.2d at 412.

The issue before us is whether the trial judge abused her discretion when she concluded that Petitioners had not shown good cause to extend the deadline for filing a certificate of qualified expert.[15] We recently described the abuse of discretion standard:

---

**14.** The good cause determination can be made by the circuit court, as well as the Director of the HCADRO or the chairman of the arbitration panel. In *Navarro–Monzo v. Washington Adventist*, we stated that a good cause extension *"shall* be granted by the Director or panel chairman for good cause shown" pursuant to § 3–2A–04(b)(5). 380 Md. 195, 205, 844 A.2d 406, 412 (2004). In *Navarro–Monzo*, we were reviewing a good cause determination made in the HCADRO, so our focus was limited to that entity. 380 Md. at 203, 844 A.2d at 412. As the intermediate appellate court has noted, however, § 3–2A–04(b)(5) "does not expressly limit such authority [to grant or deny a good cause extension] to the Director or panel chair." *Barber v. Catholic Health*, 174 Md.App. 314, 358, 921 A.2d 811, 837 (2007), *vacated on other grounds*, 400 Md. 396, 929 A.2d 155 (2007).

**15.** Counsel for Dr. Berger asserted during oral arguments before this Court that Petitioners cannot receive a good cause extension because they requested the extension more than 180 days after Petitioners filed their claims in the HCADRO. That issue is not, however, properly before this Court. The Court of Special Appeals resolved that issue when it decided it against Dr. Berger in *Kearney I*, 182 Md.App. at 195–200, 957 A.2d at 685–87 ("[W]e hold that the motion for extension for good cause was not untimely and that appellants were entitled to

There is an abuse of discretion where no reasonable person would take the view adopted by the trial court or when the court acts without reference to any guiding rules or principles. An abuse of discretion may also be found where the ruling under consideration is clearly against the logic and effect of facts and inferences before the court or when the ruling is violative of fact and logic.

Questions within the discretion of the trial court are much better decided by the trial judges than by appellate courts, and the decisions of such judges should only be disturbed where it is apparent that some serious error or abuse of discretion or autocratic action has occurred. In sum, to be reversed the decision under consideration has to be well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable.

*Falik v. Hornage,* 413 Md. 163, 182–83, 991 A.2d 1234, 1246 (2010) (quoting *Wilson v. Crane,* 385 Md. 185, 198–99, 867 A.2d 1077, 1084 (2005) (internal quotations omitted)).

We have discussed the good cause determination in a context similar to the HCMCA. In *Rios,* we explained that "circumstances that have been found to constitute good cause fit into several broad categories: excusable neglect or mistake (generally determined in reference to a reasonably prudent person standard), serious physical or mental injury and/or location out-of-state, the inability to retain counsel in cases involving complex litigation, . . . ignorance of the statutory [ ] requirement," and "where representations made by [ ] government representatives are misleading." 386 Md. at 141–42, 872 A.2d at 22–23 (discussing good cause for filing a claim for unliquidated damages against a local government beyond the 180–day notice deadline in § 5–304) (quoting *Heron v. Strader,*

present their argument for good cause to the circuit court."), and we denied Dr. Berger's petition for certiorari on that issue, *Berger v. Kearney,* 406 Md. 580, 961 A.2d 553 (2008). In addition, neither party presented arguments on that issue in their briefs. Accordingly, we assume that Petitioners would have been entitled to an extension of the certificate deadline if they had established good cause for such an extension.

361 Md. 258, 272, 761 A.2d 56, 63–64 (2000) (citations omitted)).[16] We have also explained, in regard to § 5–304(d), that justification for a good cause extension may exist when the complaining party exercised "that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances." *Heron,* 361 Md. at 271, 761 A.2d at 63 (quoting *Westfarm Assoc. v. Washington Suburban Sanitary Comm'n,* 66 F.3d 669, 676–77 (4th Cir.1995)).

Petitioners' first argument focuses on whether a government representative, *i.e.,* the Director of the HCADRO, made a misleading representation. Petitioners assert that they relied on the representation of the Director when he accepted their certificate of qualified expert and that the Director "either ignored his responsibilities or believed the certificate was sufficient under the statute." The problem with this argument is that there is no evidence that the Director made any such representation when he accepted the certificate, nor did he have any responsibility to do so. Nothing in the HCMCA instructs the Director to evaluate the certificate, and Petitioners have presented nothing to suggest that the Director actually represented to them that the certificate was sufficient. Petitioners could not have reasonably relied on a representation that the Director did not make.

Petitioners' next argument is similar to the first and suffers from a similar flaw. Petitioners argue that the HCADRO Director's Order of Transfer, transferring the case from the HCADRO to the Circuit Court, constituted a ruling upon which Petitioners relied. The Court of Special Appeals correctly rejected a similar argument in *Azarian v. Witte,* 140 Md.App. 70, 779 A.2d 1043 (2001), *aff'd,* 369 Md. 518, 801 A.2d 160 (2002). The court explained, and we agree, that "the

---

**16.** Section 5–304(d), which was at issue in *Rios v. Montgomery County,* 386 Md. 104, 872 A.2d 1 (2005), is part of a different statutory scheme than § 3–2A–04(b)(5). Nonetheless, the circumstances described in *Rios* are equally applicable here because both statutes concern the same issue: whether there is good cause to extend a deadline for a required filing. Section 5–304(d) was codified as § 5–304(c) at the time we decided *Rios.*

transfer of [the] case by [the HCADRO] to the circuit court is simply a ministerial function." *Azarian,* 140 Md.App. at 83, 779 A.2d at 1050. Accordingly, the court explained that an Order of Transfer

> does not imply that the [HCADRO] has made any determination as to the merits of that certificate [of qualified expert]. Indeed, upon the proper filing of waiver of arbitration, all further proceedings before the [HCADRO], including discovery, cease. . . . Just as the filing of a jury request divests the district court of jurisdiction to consider the jury prayer or to conduct any further proceedings, the filing of a waiver of arbitration divests the [HCADRO] of any right to consider the validity of a certificate of [qualified expert] or to conduct any further proceedings, except to transfer the claim at issue to the circuit court.

*Azarian,* 140 Md.App. at 83, 779 A.2d at 1050.

We agree with the conclusion in *Azarian* that the HCADRO proceedings cease with the proper filing of a waiver of arbitration and that the waiver divests the HCADRO of any right to consider the validity of the certificate of qualified expert. Petitioners could not have relied on the Order of Transfer as a ruling that the certificate was sufficient when the HCADRO could not have properly made such a ruling. Furthermore, the HCMCA specifically prohibits the Director of the HCADRO from ruling on dispositive matters. § 3–2A–05(a)(2) (allowing the Director to "rule on all issues of law arising prior to hearing," but only if no panel chairman has been appointed or the panel chairman is temporarily unable to serve and the issues "are not dispositive of the case"). As this case demonstrates, the sufficiency of Petitioners' certificate was a dispositive matter because it could have resulted in dismissal of the case. Accordingly, the Director would have been ruling on a dispositive matter had the Order been a determination of the certificate's sufficiency. Petitioners could not have relied on a ruling that the Director was statutorily prohibited from making.[17]

---

17. Petitioners argue that "[r]eliance on the [HCADRO] Director's ruling has been held to establish good cause in previous cases," citing *Furst v.*

Petitioners also argue that they "acted as a reasonably prudent person would in filing the claim and a certificate." The brunt of this argument is that *Walzer* changed the general understanding of what was required in a certificate of qualified expert and that, prior to *Walzer,* the "parties reasonably believed ... that the certificates were conforming." As *Walzer* explains, however, the plain language of § 3–2A-04(b)(3) states that a report of the attesting expert "shall" be "attached" to the certificate of qualified expert. *Walzer,* 395 Md. at 579–80, 911 A.2d at 436 (explaining that the statute makes "clear that the General Assembly intended for the attesting expert report to be a part of the certificate of qualified expert"). Our decision in *Walzer* did not change the statute, but only directed parties to do what the statute already required. *See Weinberg v. Safe Dep. & Trust Co.,* 198 Md. 539, 549, 85 A.2d 50, 54 (1951) (explaining that the Legislature "can always change the statute," but that "we can only interpret the law according to its plain intent and meaning"). The statute included this clear requirement when Petitioners filed their claim, and, accordingly, we cannot conclude that Petitioners were "reasonably prudent" when they ignored the requirement and attached no such report.[18]

Petitioners further argue that their original counsel in the present case "was not well-established and not privy to the intricacies of medical negligence law in Maryland" and that

---

*Isom,* 85 Md.App. 407, 584 A.2d 108, *cert. denied,* 323 Md. 1, 590 A.2d 158 (1991). This is a misinterpretation of *Furst.* In that case, the panel chairman, not the Director, made the ruling upon which there was reliance. *Furst,* 85 Md.App. at 420, 584 A.2d at 114. The panel chairman has statutory authority to make rulings on issues of law, § 3–2A–05(a)(1), and in *Furst* there was no election of waiver.

**18.** Petitioners argue in their brief submitted to this Court that "though the statute was known to [Petitioners] at the time of filing the certificate, [Petitioners] were ignorant as to the specific requirements demanded by it—that an expert report must be attached." Petitioners therefore concede that they were aware of the statute when they filed their certificate, but they also ask us to excuse them for failing to make an attempt at satisfying the expert report requirement. A failure to follow a clear statutory requirement does not support a finding of good cause for additional time to satisfy that same requirement.

this previous counsel "withdrew from this case in the midst of discovery." Petitioners contend that this situation caused them difficulty in retaining counsel. *See Rios,* 386 Md. at 141, 872 A.2d at 22–23 (identifying "the inability to retain counsel" as a circumstance where good cause might exist). We have never said, however, that mere difficulty in retaining counsel favors a finding of good cause. Furthermore, the record in this case shows that Petitioners actually had counsel throughout this case. Petitioners' original counsel filed the complaint and his appearance in this case on June 11, 2005. He also filed a motion on Petitioners' behalf on January 5, 2006, asking for a revised scheduling order. Subsequently, he filed a motion to withdraw from the case on February 22, 2006, but within approximately two weeks Petitioners' present counsel had filed a motion for leave to enter his appearance. On March 30, 2006, the trial court granted the original counsel's motion to withdraw and, in the same order, entered the appearance of Petitioners' present counsel. We cannot see, based on this record, any time during this case when Petitioners actually had difficulty retaining counsel.[19]

Petitioners' final argument is that the trial court failed "to promote justice in a logical and common sense manner" when it ruled that no good cause existed. They assert that "a denial of good cause is a denial of common sense notions of fairness and justice" and that "[t]he trial court admittedly eschewed its ability to promote fairness and justice through common sense application of the law by finding that no good cause existed." [20]

---

**19.** Petitioners have not pointed us to anything in the record suggesting that they were effectively without counsel. In particular, they have not suggested any reason why their alleged difficulty retaining counsel, or any acts by their original counsel, prevented them from filing a sufficient certificate of qualified expert. *Cf. Ransom v. Leopold,* 183 Md. App. 570, 586–87, 962 A.2d 1025, 1034–35 (2008) (rejecting the plaintiffs' claim that they were effectively without counsel when they did "not explain, and did not provide any affidavits below addressing, what accounted for the mistake" by counsel).

**20.** Petitioners seize on this statement by the trial judge, lifted out of context:

Petitioners do not provide any case law directly supporting this argument, but instead cite our cases stating that a trial court abuses its discretion when its decision is "violative of fact and logic" or "against the logic and effect of facts and inferences before the court." *See, e.g., King v. State,* 407 Md. 682, 697, 967 A.2d 790, 798–99 (2009) (quoting *North v. North,* 102 Md.App. 1, 13–14, 648 A.2d 1025, 1031 (1994)). We do not, however, see how the trial judge violated either fact or logic. The trial judge considered Petitioners' arguments for why there was good cause to extend the deadline and concluded that those arguments were insufficient. Just as we have in this opinion, the trial court reached this conclusion by rejecting the notion that Petitioners should be given a deadline extension when they ignored clear statutory requirements. This decision was not an abuse of discretion, but a decision to follow the law.

## CONCLUSION

Our decisions in *Walzer* and *Carroll* reiterated what the HCMCA already made obvious: the Legislature has set forth clear requirements that parties must follow in certain cases against health care providers. One of those requirements is that claimants or plaintiffs must attach a report from their attesting expert to their certificate of qualified expert. Among other things, the report must state what the standard of care was and how the defendant allegedly departed from it. Petitioners failed to satisfy the report requirement, and they have not persuaded us that Dr. Berger waived his challenge to the certificate's sufficiency or that the trial court abused its discretion when it rejected Petitioners' argument that there

---

So I think that the clear lesson from the opinion of the Court of Special Appeals [in *Kearney I*] is ... stop using common sense, look at the statute, what does it say, what does it not say.

The trial judge seems to be saying what we have said many times: if the statute is clear, a court should not substitute its own judgment for the plain meaning of the statute. *See, e.g., Ricketts v. Ricketts,* 393 Md. 479, 497, 903 A.2d 857, 867–68 (2006) ("Where ... a statute is clear and unambiguous, logic will not substitute for, or trump, the clarity of the words.").

was good cause to grant them more time to do so. Under these circumstances, § 3–2A–04(b) requires dismissal without prejudice of Petitioners' case.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED. COSTS TO BE PAID BY PETITIONERS.**

BELL, C.J., MURPHY and ELDRIDGE, JJ., dissent.

MURPHY, J., dissenting, which BELL, C.J. and ELDRIDGE, J. join.

In my opinion, it is unfair to extend the holding of *Walzer v. Osborne* to cases in which, *before* filing the motion to dismiss on the ground that the plaintiff failed to file a sufficient "certificate of qualified expert," the defendant—as a result of pre-trial discovery that preceded the *"Walzer"* motion—had already been provided with all of the information required by CJ § 3–2A–04(b). I would therefore reverse the judgment of the Circuit Court and direct that the case be remanded for a determination of whether the case at bar is such a case. If it is, the Petitioners should not be denied their day in court.

Chief Judge BELL and Judge ELDRIDGE have authorized me to state that they join this dissenting opinion.